ORIGINAL

ECF

FILED
SEP 2 6 2003
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Engineered Demolition, Inc.
3901 Schreiber Way
Coeur d'Alene, ID 83815

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

Case No. 03-2231C

**COMPLAINT**

COMES NOW the Plaintiff, Engineered Demolition, Inc. (ENDE), by counsel, and hereby asserts the following for its Complaint against the Defendant, the United States of America, acting through and by the United States Army Corps of Engineers (USACE), and states as follows:

**JURISDICTION**

1. This court has jurisdiction over this matter pursuant to the Tucker Act, 28 U.S.C. § 1491. ENDE brings this action pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 601 et seq. (CDA).

2. Pursuant to the CDA, 41 U.S.C. § 609, ENDE brings this action directly to the United States Court of Federal Claims within 12 months of the date that the Contracting Officer's Final Decision was received by ENDE.

**PARTIES**

3. The Plaintiff, ENDE, is a corporation organized and existing under the laws of the State of Minnesota, with its principal place of business in Coeur d'Alene,

Idaho. While highly skilled in its abilities in the areas of demolition and environmental remediation, ENDE is a small 8(a) company.

4. Greenfield Logistics, LLC (Greenfield), although not a formal party to this action, is an entity whose interests were affected in the underlying CDA claim and whose interests are being sponsored and passed through by Plaintiff in this proceeding, as authorized under the CDA. Greenfield is a corporation organized and existing under the laws of the State of Utah, with a principal place of business in Lake Point, Utah.

5. The Defendant is the United States of America, acting through its agency, instrumentality, and/or agent, the USACE.

## NATURE AND SUMMARY OF ACTION

6. This action is brought by ENDE pursuant to the provisions of the CDA, 41 U.S.C. § 609 seeking recovery against the government for additional costs associated with a shortfall in quantities under a unit price contract for the removal, transportation, and disposal of radiologically contaminated soils stored at the Hazelwood Interim Storage Site (HISS). The bases for entitlement include a number of independent legal theories, including breach of contract, constructive change, and defective estimate under a variable quantities contract. ENDE seeks under-absorbed and/or unrecovered overheads in the aggregate amount of $69,047 and additional costs incurred by Greenfield in the amount of $38,940 to secure rail cars that ultimately were not required due to the quantity shortfall. ENDE's combined prayer for relief, including the sponsorship of the Greenfield claim, totals $107,987, plus interest allowed as per the CDA.

## STATEMENT OF FACTS

7. On August 31, 2001, the USACE awarded ENDE Contract No. DACW43-01-C-0426 (the Contract) for the removal, transportation, and disposal of radiologically contaminated soils stored at the HISS. The Contract was the last of a series of four such contracts between the parties and was intended to complete the removal of all remaining contaminated soils at that particular site.

8. The Contract was for a firm, fixed price of $2,301,894.67. Included in that amount were two variable quantity, unit-priced line items. One was for main pile removal at $49.00 per cubic yard and the other was for transportation and disposal at $125.00 per cubic yard.

9. The Contract documents estimated the quantity of contaminated material to be removed to be 8,080 cubic yards. The Contract documents also estimated the corresponding quantity of contaminated material to be transported to be 10,500 cubic yards given the uncompacted nature of the excavated material. The volumes were determined by survey and were stated to be estimates. Although the Contract documents noted that the contractor could conduct its own survey to verify the quantities, ENDE had no reason to doubt the correctness of the survey information provided by the USACE.

10. The Contract period of performance was fixed at 90 days, with liquidated damages stipulated at $1,165.00 per day for each day that completion was delayed.

11. During negotiations between the parties conducted on August 16 – 17, 2001, ENDE offered its conclusion that 125 rail cars would be required for the expected uncompacted volume and based on ENDE's experience under its previous three contracts

at the site. The USACE did not disagree with ENDE's assessment of its expected rail car requirements.

12. The Contract did not include or incorporate by reference any version of the FAR-based "Changes" clause, "Differing Site Conditions" clause, or "Variation in Estimated Quantities" clause. Notwithstanding the physical absence of these clauses, the USACE Preconstruction and Mutual Understanding Meeting minutes for the Contract held on September 6, 2001 include the notation "A VEQ modification at end of contract will adjust the amounts."

13. On September 24, 2001, ENDE entered into a subcontract with Greenfield (the Subcontract) for Greenfield to transport the removed material to a low-level nuclear waste disposal site in Utah. The Subcontract further required Greenfield to furnish a sufficient number of rail cars to accomplish the off-loading and transportation task. In reliance on the USACE survey and on the determination by ENDE that 125 cars would be required, as concurred with by the USACE, Greenfield ordered 125 cars.

14. Work proceeded under both the Contract and the Subcontract in a fairly uneventful manner until late during the period of performance. Thereupon, on approximately October 11, 2001, the Contracting Officer's Representative (COR) decided that the final elevation for the finish grade would be based on the elevation of the haul road, an elevation that was substantially higher than ENDE's expectation and an elevation that was substantially higher than the elevation disclosed in the Contract documents.

15. The COR's action regarding the change in finish grade elevation was unauthorized in that the Contract did not contain a "Changes" clause that would have

allowed for such a change to be made. Alternatively, the COR's action regarding the change in finish floor elevation imported the "Changes" clause into the Contract by operation of law so as to grant ENDE a correlative right to an equitable adjustment by virtue of the COR's invocation of this clause.

16. As the result of this change in finish grade elevation, the total quantity of material removed from the main pile was 6,678 c.y., 1,402 c.y. less than that bargained for and expected by ENDE. Of the removed quantity of 6,678 c.y., the USACE directed that ENDE dispose of 773 c.y. in a depression in the grade created during the performance of one of ENDE's earlier contracts at the site.

17. As a result of these USACE directives, ENDE was paid the unit rate under the Contract for excavating 5,905 c.y. (8,080 c.y. less 1,402 c.y. less 773 c.y.). Similarly, for these same reasons, ENDE also was paid the Contract unit rate for transporting 7,670 c.y., rather than the expected quantity of 10,500 c.y. The actual pay quantities for both pay items were approximately 27 percent less than the estimated quantities.

18. The Contract was the only project that ENDE was prosecuting at the time, and, as such, the Contract bore all of ENDE's home office overhead and was expected to provide the only source of profit during this period. Because the quantities for the variably priced items were cut short by the USACE's directives, ENDE was precluded from recovering its full complement of overhead costs.

19. Also because of the quantity shortfalls caused by these USACE directives, Greenfield was left with extra rail cars that it had reasonably secured for Subcontract work but could not profitably employ.

20. Following several rounds of communications between the parties on the matter, ENDE filed a claim for relief dated July 24, 2002 in the aggregate amount of $107,987, which included sponsorship of the Greenfield pass-though claim in the amount of $38,940.

21. By letter dated September 25, 2002, the USACE issued its Final Decision denying ENDE's claim in its entirety (Final Decision incorrectly references an ENDE letter dated July 17, 2002 as ENDE's claim). ENDE received the Final Decision on September 30, 2002.

## COUNT I

### Breach of Contract: Absent a "Changes" Clause, the USACE had no Authority to Modify the Contract Work Scope

22. The Contract did not include any version or variation of the "Changes" clause as set out in the Federal Acquisition Regulation (FAR). The Contracting Officer in its Final Decision dated September 25, 2002 held that the Contract was a "services contract" for which the inclusion of a "Changes" clause was neither recommended nor required.

23. In the absence of a "Changes" clause, the USACE was not empowered to change any material condition of performance. The USACE was required to make "perfect tender" of its performance obligations as per the terms of the Contract, just as ENDE was.

24. The USACE's purported changes to the Contract, *viz.*, changing the final grade elevation and directing that ENDE deposit material into a depression created during an earlier and similar contract between USACE and ENDE were unauthorized given the absence of a "Changes" clause. Such unauthorized directives, in derogation of the

USACE's "perfect tender" obligations, constitute breach for which ENDE is entitled to recover Contract breach damages.

WHEREFORE, ENDE respectfully requests that this Court enter an Order on Count I that the USACE breached the Contract and that as a result thereof, ENDE is entitled to recover from the USACE the total amount of $107,987, consisting of $69,047 of under-absorbed and unrecovered overheads and $38,940 on the Greenfield pass-through claim, plus CDA interest at the applicable rate.

## COUNT II

### Equitable Adjustment: USACE's Invocation of "Changes" Clause Authority Confers Right on ENDE to Recover Equitable Adjustment for Corresponding Costs

25. Plaintiff realleges each of the allegations contained in paragraphs 1 through 24 as if fully set forth herein.

26. To the extent that the Court finds that the USACE acted in an authorized capacity in changing the final grade elevation and in directing that ENDE deposit material into a depression created during an earlier and similar contract at the site, then the Court necessarily has engrafted onto and/or implied into the Contract a "Changes" clause that authorizes constructive and directed changes to the work.

27. If such a *de facto* "Changes" clause is in place under the Contract, then ENDE is entitled to an equitable adjustment for additional costs that were incurred by it and its properly sponsored subcontractors in response to the USACE's exercise of "Changes" clause authority.

WHEREFORE, ENDE respectfully requests that this Court enter an Order on Count II that finds that ENDE is entitled to recover from the USACE an equitable

adjustment in the total amount of $107,987, consisting of $69,047 of under-absorbed and unrecovered overheads and $38,940 on the Greenfield pass-through claim, plus CDA interest at the applicable rate.

## COUNT III

### Equitable Adjustment: ENDE is Entitled to an Equitable Adjustment Under the "Changes" Clause that is Made Part of the Contract by Operation of Law

28. Plaintiff realleges each of the allegations contained in paragraphs 1 through 27 as if fully set forth herein.

29. Notwithstanding the USACE's labeling of the Contract as a "services contract," the Contract was really a standard construction / environmental remediation contract for which a "Changes" clause not only is recommended but is required.

30. In such circumstances, the "Changes" clause represents a clause that expresses a significant or deeply ingrained strand of public procurement policy such that the clause will be imported by operation of law under the "Christian" doctrine.

31. ENDE is entitled to an equitable adjustment for additional costs that were incurred by it and its properly sponsored subcontractors in response to the USACE's exercise of "Changes" clause authority.

WHEREFORE, ENDE respectfully requests that this Court enter an Order on Count III that finds that ENDE is entitled to recover from the USACE an equitable adjustment in the total amount of $107,987, consisting of $69,047 of under-absorbed and unrecovered overheads and $38,940 on the Greenfield pass-through claim, plus CDA interest at the applicable rate.

## COUNT IV

**Breach of Contract: USACE Breached its Duty to ENDE to Provide an Accurate Determination of the Estimated Quantities for the Variable Quantity Line Items**

32. Plaintiff realleges each of the allegations contained in paragraphs 1 through 31 as if fully set forth herein.

33. As the Contracting Officer notes in her Final Decision, the Contract contains two variable quantity line items, one for main pile removal and the other for the disposal and rail car transportation of the contaminated soils. These two Contract line items lay at the heart of the Contract itself in that they constitute the principal Contract activities and they were expected to constitute, by far, the bulk of the overall Contract price.

34. In preparing a variable quantity contract, the Government has a duty to prepare and project the estimated quantities in a non-negligent manner taking into account all information reasonably available to it.

35. Here, by not taking into account anticipated changes in the final grade elevation and the planned deposition of material into a depression created during an earlier and similar contract at the site, the USACE prepared its estimates for the variable quantity line items in a negligent manner in breach of USACE's duty to ENDE. Because of this underlying negligence and resulting breach, the USACE's estimated quantities were approximately 27 percent higher than actual quantities for the affected line items and thereby caused ENDE and Greenfield to incur additional costs.

WHEREFORE, ENDE respectfully requests that this Court enter an Order on Count IV that the USACE breached the Contract, and that as a result thereof, ENDE is

entitled to recover from the USACE the total amount of $107,987, consisting of $69,047 of under-absorbed and unrecovered overheads and $38,940 on the Greenfield pass-through claim, plus CDA interest at the applicable rate.

Dated: this 26th day of September 2003.

Respectfully Submitted,

**Engineered Demolition, Inc.**

By Counsel:

John C. Person, Esquire
PERSON & CRAVER LLP
1801 K Street, N.W.
Washington, D.C. 20006
(202) 466-4434 – phone
(202) 466-4416 – fax

Attorneys for Plaintiff

Of Counsel:

Hon. Craig Kosonen
Engineered Demolition, Inc.