# In the United States Court of Federal Claims

No. 03-2231C

(Filed June 9, 2004)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | ) | Breach of contract; motion |
| | ) | to dismiss; Rule 12(b)(1); |
| **ENGINEERED DEMOLITION, INC.,** | ) | subject matter jurisdiction; |
| | ) | Contract Disputes Act; |
| Plaintiff, | ) | certification requirement set out |
| v. | ) | in 41 U.S.C. § 605(c)(1) and (6); |
| | ) | *Chevron* deference; *Adams Fruit* |
| **THE UNITED STATES,** | ) | exception; overbreadth and |
| | ) | partial invalidity of FAR [48 |
| | ) | C.F.R.] § 33.201; separate |
| Defendant. | ) | claims versus a single, |
| | ) | fragmented claim |
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |

John C. Person, Person & Craver LLP, Washington, D.C., for plaintiff. Of counsel was Craig Kosonen, General Counsel, Engineered Demolition, Inc., Coeur d'Alene, ID.

Andrew P. Averbach, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Assistant Attorney General Peter D. Keisler, David M. Cohen, Director, and Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch. Of counsel was Beth Pitrolo, United States Army Corps of Engineers, St. Louis, MO.

## OPINION AND ORDER

LETTOW, Judge.

This contract case is before the Court on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). Plaintiff, Engineered Demolition, Inc. ("Engineered Demolition"), seeks to recover additional costs allegedly incurred under a contract pursuant to which Engineered Demolition at the behest of the United States Army Corps of Engineers ("Corps of Engineers")

removed, transported, and disposed of radiologically contaminated soil stored at the Hazelwood Interim Storage Site ("HISS") located in northern St. Louis County, Missouri. Engineered Demolition brings this action pursuant to the Contract Disputes Act ("CDA")[1] based on breach of contract, or, alternatively, on a claim for equitable adjustment. Specifically, Engineered Demolition seeks to recover $69,047 in under-absorbed overhead associated with a shortfall in the quantity of contaminated soil to be removed allegedly caused by the Corps of Engineers's decision to change the final elevation of the finish grade. Additionally, Engineered Demolition sponsors the claim of its subcontractor, Greenfield Logistics, LLC ("Greenfield"), for $38,940 of costs relating to an excess number of railcars ordered for the project.

The government contends that this Court lacks jurisdiction over Engineered Demolition's claims because Engineered Demolition failed to satisfy the CDA's certification requirement, which applies to claims exceeding $100,000. *See* 41 U.S.C. § 605(c)(1); *see also* Federal Acquisition Regulations ("FAR") [48 C.F.R.] § 33.207(a).[2] Engineered Demolition concedes that it did not submit certification statements,[3] but it maintains that the two claims are separate and that the certification requirement is not applicable because neither exceeds $100,000. The parties have fully briefed their positions, and a hearing was held on March 25, 2004. For the reasons set out below, the government's motion to dismiss is denied.

**BACKGROUND**

Engineered Demolition entered into a contract with the Corps of Engineers on August 31, 2001, to complete the removal, transportation, and disposal of contaminated soil stored at the HISS. Compl. ¶ 7. The contract provided that Engineered Demolition would receive $49.00 per cubic yard ("c.y.") of soil removed and $125.00 per c.y. of soil transported and disposed. *Id.* ¶ 8. The contract documents estimated that 8,080 c.y. would be removed and 10,500 c.y. transported, taking into account the uncompacted volume of the material as removed from the site. *Id.* ¶ 9.

---

[1]The Contract Disputes Act of 1978, as amended, is codified at 41 U.S.C. §§ 601-613.

[2]The Federal Acquisition Regulations are codified in title 48 of the Code of Federal Regulations ("C.F.R."). Citation to title 48 will be omitted in subsequent references to the FAR.

[3]If the certification requirement were to be applicable to the claims at issue in this case, two separate certifications would have been necessary because the form of certification for a claim made directly by a person or entity differs from that put forward on behalf of a subcontractor. *Compare* FAR § 33.207 (contractor certification), *with Transamerican Ins. Corp. v. United States*, 973 F.2d 1572, 1580 (Fed. Cir. 1992) ("[T]he certification requirement [for a claim made on behalf of a subcontractor] requires not that the prime contractor believe the subcontractor's claim to be certain, but that the prime contractor believe that there is good ground for the claim.").

During negotiations held on August 16-17, 2001, between Engineered Demolition and the Corps of Engineers, Engineered Demolition suggested that 125 railcars would be necessary for transportation, which estimate the Corps of Engineers did not dispute. *Id.* ¶ 11. On September 24, 2001, Engineered Demolition entered into a subcontract with Greenfield, pursuant to which the latter would furnish railcars and transport the soil to a low-level nuclear waste disposal site in Utah. *Id.* ¶ 13. Greenfield ordered 125 railcars, relying on the Corps of Engineers's survey and on Engineered Demolition's assessment. *Id.*

On approximately October 11, 2001, the Contracting Officer's Representative ("COR") changed the elevation of the finish grade, making the final elevation higher than that specified in the contract documents. *Id.* ¶ 14. As a result, the total amount of soil removed was 6,678 c.y., 1,402 c.y. less than originally estimated. *Id.* ¶ 16. Additionally, of the 6,678 c.y. that were removed, the Corps of Engineers instructed Engineered Demolition to place 773 c.y. in a depression in a grade created during Engineered Demolition's performance under an earlier contract for work at the same site. *Id.* Engineered Demolition was accordingly paid for removing only 5,905 c.y. rather than the expected quantity of 8,080 c.y., and for transporting 7,670 c.y. rather than 10,500 c.y. *Id.* ¶ 17. A number of the railcars procured by Greenfield were not used. *Id.* ¶ 19.

Thereafter, on February 10, 2002, Engineered Demolition requested an equitable adjustment in the amount of $161,729.16 for unabsorbed overhead, costs relating to unused railcars, and lost profits. App. Supplement, Ex. 1 (Letter from Bill Welch to David Mueller).[4] The COR responded on April 18, 2002, advising that the request would not be granted because the contract was a services contract rather than a construction contract and lacked a Variation in Estimated Quantities ("VEQ") clause. *Id.*, Ex. 2 (Letter from David E. Mueller to Bill Welch). Subsequently, on July 17, 2002, Engineered Demolition submitted a claim for an equitable adjustment to the CO, focusing on the Differing Site Conditions ("DSC") clause and on the Changes clause. Def.'s App., Ex. 1 at 7-8 (Letter from Anna Chong to Brenda Wynne-George).[5]

---

[4]This letter was not submitted as part of the original record, but the Court requested at the hearing that the letter and the COR's response to it be made available to the Court. *See* Hr'g Tr. at 26-27, 34-37. This correspondence was cited and addressed in Engineered Demolition's subsequent submission of a claim to the Contracting Officer ("CO"). The supplementation was directed because the prior correspondence might have been relevant to the determination of the procedural posture of this case and thus whether this Court has jurisdiction over it. *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947).

[5]In its complaint, Engineered Demolition represents that it filed its claim with the CO on July 24, 2002, Compl. ¶ 20, and that the CO's decision incorrectly references a letter dated July 17, 2002, as Engineered Demolition's claim. *Id.* ¶ 21. The limited record available to the Court does not contain any letter dated July 24, 2002. In any event, Engineered Demolition represents that the letter of July 17th contains the same contents as the letter of July 24th. Pl.'s Resp. to Def.'s Mot. to Dismiss ("Pl.'s Resp.") at 3.

Engineered Demolition sought recovery of the following amounts: $62,427.10 of total unrecouped overhead, $38,940.00 on behalf of Greenfield for its loss on unused railcars, and $6,619.80 of Engineered Demolition's markup on Greenfield's cost. *Id.* No certifications were provided by Engineered Demolition in conjunction with the claim. *Id.*; Pl.'s Resp. at 3. The CO denied Engineered Demolition's claim on September 25, 2002, on the ground that the contract did not contain a VEQ or DSC clause and that no clauses were required to be impliedly included. Def.'s App., Ex. 2 at 11-12 (Letter from Brenda Wynne-George to Anna Chong). Engineered Demolition filed its complaint in this Court on September 26, 2003, seeking recompense for $69,047 of its overhead, Greenfield's claim for $38,940, and Engineered Demolition's markup of Greenfield's charges for the unused railcars. Compl. ¶ 6. Engineered Demolition's complaint is based on breach of contract, constructive change, and equitable adjustment theories.[6]

## STANDARD FOR DECISION

The jurisdiction of a federal court must be established as a threshold matter before the court may entertain the merits of an action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998). The subject matter jurisdiction of the Court of Federal Claims is "prescribed by the metes and bounds of the United States' consent to be sued in its waiver of immunity." *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461 (Fed. Cir. 1998) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). A waiver of the sovereign immunity of the United States "cannot be implied but must be unequivocally expressed." *Saraco v. United States*, 61 F.3d 863, 864 (Fed. Cir. 1995) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)). The Tucker Act is invoked to provide the basis for the Court's jurisdiction over this case.[7]

---

[6]The complaint was filed within twelve months after Engineered Demolition received the CO's decision and thus was timely. *See* 41 U.S.C. § 609(3). In its letter of July 17, 2002, submitting claims to the CO, Engineered Demolition represented that it had filed a notice of appeal with the agency board of contract appeals. Def.'s App., Ex. 1 at 1-2. Engineered Demolition had apparently done so based on the mistaken belief that the COR's letter of April 18, 2002, refusing to grant an equitable adjustment, had constituted a final decision, the receipt of which by Engineered Demolition could provide a basis for an appeal to the agency board. *See* FAR § 33.211(a)(4)(v); *see also* Hr'g Tr. at 36-37. Engineered Demolition evidently reconsidered both its position on finality and its choice of forum because it voluntarily withdrew its appeal to the agency board before filing its complaint in this Court. *Id*. at 36, 38-39.

[7]The Tucker Act vests jurisdiction in this Court "to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978." 28 U.S.C. § 1491(a)(2). Section 10(a)(1) of the CDA is codified at 41 U.S.C. § 609(a)(1), *see* 28 U.S.C.A. § 1491 note (West 2004), and provides that, after a claim has been presented to a contracting officer and has been denied or has neither been granted nor denied in timely fashion, "a contractor may bring an action directly on the claim in the United States Court of Federal Claims."

In considering a motion brought under Rule 12(b)(1), a court assumes as true all well-pleaded facts alleged in the complaint and construes those facts in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000). When the underlying facts establishing jurisdiction are put at issue, a court may examine evidence outside the face of the pleadings. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936); *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993). The burden of establishing subject matter jurisdiction rests with the plaintiff. *McNutt*, 298 U.S. at 189; *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998).

## ANALYSIS

Two paragraphs of Subsection 605(c) of the CDA, 41 U.S.C. § 605(c), concern certification of claims by a contractor against the government arising out of a contract. Paragraph 605(c)(1) requires that a claim in excess of $100,000 must be certified:

> For claims of more than $100,000 the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor.

41 U.S.C. § 605(c)(1); *see also* FAR § 33.207(c). As part of the Federal Courts Administration Act of 1992, Pub. L. No. 102-572, § 907, 106 Stat. 4506, 4518,[8] Congress amended 41 U.S.C. § 605(c)(6) to ameliorate the jurisdictional consequences of the certification requirement by providing that:

> The contracting officer shall have no obligation to render a final decision on any claim of more than $100,000 that is not certified in accordance with paragraph (1) if, within 60 days after receipt of the claim, the

---

[8]The 1992 amendments to the provisions of the CDA relating to certification are included in Title IX of the Federal Courts Administration Act, Pub. L. No. 102-572, 106 Stat. 4516. The heading for Title IX is "Court of Federal Claims," and a separate short title is specified for Title IX as the "Court of Federal Claims Technical and Procedural Improvements Act of 1992." *Id*. § 901, 106 Stat. 4516. The amendments to the certification provisions of the CDA are set out in Section 907, titled "Jurisdiction," and specifically in Subsection (a), titled "Certifications." *Id*. § 907(a), 106 Stat. 4518.

That Title IX generally and Section 907 specifically address this Court's jurisdiction is emphasized by the fact that Subsection 907(b) is headed "Jurisdiction of the Court of Federal Claims" and contains an amendment to 28 U.S.C. 1491(a)(2) respecting this Court's power to provide equitable relief in contract disputes. *See id*., § 907(b), 106 Stat. 4519.

> contracting officer notifies the contractor in writing of the reasons why any attempted certification was found to be defective. *A defect in the certification of a claim shall not deprive a court or an agency board of contract appeals of jurisdiction over that claim*. Prior to the entry of a final judgment by a court or a decision by an agency board of contract appeals, the court or agency board shall require a defective certification to be corrected.

41 U.S.C. § 605(c)(6) (emphasis added) (as amended by Pub. L. No. 103-355, § 2351, 108 Stat. 3322 (Oct. 13, 1994), increasing the certification threshold from $50,000 to $100,000). The first issue in this case concerns the interpretation of the statutory phrases "[a] defect in the certification" and "defective certification" and the jurisdictional implications of the statutory language, especially insofar as the certification requirement bears on the situation in which a contractor fails to certify two or more claims, each less than $100,000, because the contractor reasonably believed the claims to be separate and distinct requests for relief. A second issue is whether Engineered Demolition's claim and the claim it put forward on behalf of Greenfield, its subcontractor, in effect constitute a single claim for purposes of the CDA.

*A. Statutory Construction of 41 U.S.C. § 605(c)(1) and (6)*

It is axiomatic that "[u]nless exceptional circumstances dictate otherwise, '[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete.'" *Burlington N. R.R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461 (1987) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)). *See also Tennessee Valley Authority v. Hill*, 437 U.S. 153, 184 n.29 (1978) ("When confronted with a statute which is plain and unambiguous on its face, we ordinarily do not look to legislative history as a guide to its meaning . . . . Here it is not *necessary* to look beyond the words of the statute."). However, the statutory terms at issue are most assuredly not plain in their application to the facts of this case. The statute does not define the terms "defect" or "defective," nor does the statutory context suggest how those terms might relate to the factual setting at hand. The government argues that there was no certification of the claims, implying that a complete absence of certification does not amount to "[a] defect in the certification of a claim," within the meaning of the statute. Def.'s Mot. to Dismiss at 4-5. *See* 41 U.S.C. § 605(c)(6). Nonetheless, the statute goes on to state that a defect in certification of a claim "shall not deprive a court . . . of jurisdiction over that claim." 41 U.S.C. § 605(c)(6). In short, the Court must determine whether the complete absence of a certification deprives this Court of jurisdiction where an error in an attempted certification would not, and in doing so the Court must particularly take into account the situation where the claiming contractor could reasonably have believed that several claims below the statutory limit for certification were separate and distinct requests for relief.

The legislative materials attendant to the 1992 amendments to the CDA provide some illumination to the ambiguous statutory language about certification. The fundamental purposes of the certification requirement have been to provide an accurate appraisal of the contractor's

damages and thus encourage settlements and to discourage improper submissions by holding contractors liable for fraudulent claims. *See Medina Constr., Ltd. v. United States*, 43 Fed. Cl. 537, 547 (1999). These relatively limited purposes have been extended by decisions holding that the subject matter jurisdiction of this Court or an agency board of contract appeals depends on a contractor's compliance with the certification requirement. *See United States v. Grumman Aerospace Corp.*, 927 F.2d 575, 579 (Fed. Cir. 1991) (collecting cases). Under these precedents, the government was able to raise this jurisdictional issue at any point during the proceedings of a case, including on appeal, and the effect of a successful challenge was to require the contractor to begin the claim process anew. *See, e.g., Court of Federal Claims Technical and Procedural Improvements Act: Hearing on S. 2521 Before the Subcomm. on Courts and Admin. Practice of the S. Comm. on the Judiciary*, 102d Cong. 11-12 (1992) ("S. 2521 Hr'g") (statement of Hon. Loren A. Smith, Chief Judge, U.S. Claims Court); *Federal Courts Administration Act of 1992: Hearing on H.R. 5933 Before the Subcomm. on Intellectual Prop. and Judicial Admin. of the House Comm. on the Judiciary*, 102d Cong. 79-80 (1992) ("H.R. 5933 Hr'g") (statement of Hon. Loren A. Smith, Chief Judge, U.S. Claims Court). As then-Chief Judge Smith testified succinctly before subcommittees of both houses of Congress in 1992, the certification requirement "hurt[] real people. Particularly, small business people who are less able to deal with the intricacies and complexities of Federal procurement law. The judges of the court felt . . . that we had a moral obligation to bring to Congress our concern that we are wasting people's resources." H.R. 5933 Hr'g at 73; *see* S. 2521 Hr'g at 2-3 (certification requirement was "wasting resources of U.S. citizens and [was] causing litigants before [the Court] unnecessary litigation and expense").

The 1992 amendments were enacted to correct these unintended consequences. The foundation for the amendments was laid by a bill, styled the Federal Courts Study Committee Implementation Act of 1991, S. 1569, 102d Cong. (1991), which was introduced in the Senate by Senator Heflin in July 1991. This bill made no mention of the certification requirement. On April 2, 1992, however, Senator Heflin introduced a further bill, which provided in pertinent part: "Notwithstanding any other provisions of law or judicial doctrine, the claim certification requirements of [41 U.S.C. § 605] shall not be deemed jurisdictional in any court or agency board proceeding pursuant to sections 607, 608 or 609 of [Title 41]." Court of Federal Claims Technical and Procedural Improvements Act of 1992, S. 2521, 102d Cong. § 10(d) (1992). Aside from a hearing, S. 2521 Hr'g, no further action was taken on S. 2521, but its substance was incorporated into the broader court-improvement bill. On August 3, 1992, Senator Heflin introduced an amendment to his original bill, S. 1569, containing a provision relating to certification akin to that in S. 2521:

> If the certification of a claim pursuant to this Act is technically defective, a court or agency board of contract appeals may permit the certification to be corrected at any time prior to a final decision by the court or agency board of contract appeals unless the failure properly to certify in the first instance was fraudulent, in bad faith, or with reckless or grossly negligent disregard of the requirements of the relevant statutes or regulations.

Amendment No. 2837 to S. 1569, 102d Cong. § 1109, 138 Cong. Rec. S11395 (daily ed. Aug. 3, 1992). The Senate passed S. 1569 as amended to include this provision. S. 1569, 102d Cong. § 1109, 138 Cong. Rec. S11234, 11237 (daily ed. Aug. 3, 1992).

The following month, H.R. 5933 was introduced in the House of Representatives by Representative Hughes (for himself and Representative Moorhead), which bill contained the same language as S. 1569 with respect to certification. Federal Courts Administration Act of 1992, H.R. 5933, 102d Cong. § 909 (1992). Importantly, the House Report on H.R. 5933 illuminated the term "technically defective":

> The term "technically defective" is intended to cover the full range of defects found by the courts that do not involve a substantive defect, such as bad faith, fraud, or reckless and intentional disregard of the statutory certification requirements. Examples of "technically defective" certifications made curable by this amendment include certification with each document submitted as part of the claim when all claim documentation is not submitted simultaneously, *missing certifications when two or more claims not requiring certification are deemed by the court or board to be a larger claim requiring certification*, and certification by the wrong or incorrect representative of the contractor (when the person making the certification was authorized by the contractor to certify on its behalf). This list is not intended to be exclusive, but to illustrate that use of the word "technically" does not narrowly and unreasonably limit the scope of this amendment.

H.R. Rep. No. 102-1006, at 28 (1992), *reprinted in* 1992 U.S.C.C.A.N. 3921, 3937 (emphasis added). On the same day that the House ordered its report to be printed, the House passed H.R. 5933, as amended. 138 Cong. Rec. H11117-22 (daily ed. Oct. 3, 1992). The word "technically" was dropped, and the certification provision now read, in relevant part:

> The contracting officer shall have no obligation to render a final decision on any claim of more than $50,000 that is not certified in accordance with paragraph (1) if, within 60 days after receipt of the claim, the contracting officer notifies the contractor in writing of the reasons why any attempted certification was found to be defective. A defect in the certification of a claim shall not deprive a court or an agency board of contract appeals of jurisdiction over that claim. Prior to the entry of a final judgment by a court or a decision by an agency board of contract appeals, the court or agency board shall require a defective certification to be corrected.

*Id*. at H11120.[9] The House then substituted the text of S. 1569 with the text of H.R. 5933 and passed S. 1569. *Id*. at H11129. No conference between the Senate and the House was held. Several days after House passage of its differing text for S. 1569, the Senate adopted the House version, and the bill went to the President. 138 Cong. Rec. S17254-60 (daily ed. Oct. 7, 1992).

The colloquy in the Senate attendant to final passage of S. 1569 continued to refer to the "technical" nature of defective certifications. For example, Senator Grassley, in requesting that he be added as a co-sponsor of the bill, stated:

> Under the changes provided in this bill, the [C]laims [C]ourt or the board of contract appeals may allow a certification to be corrected for technical defects at any time prior to a final decision, unless the defective certification was fraudulent, made in bad faith, or made with reckless or gross negligence.

*Id*. at S17260. It is apparent that this statement paraphrases the prior versions of H.R. 5933 and S. 1569, as amended by Senator Heflin's Amendment No. 2837. The following day, in conjunction with the presentation of S. 1569 to the President, Senator Heflin noted that the bill would "eliminate continued litigation over certification technicalities." 138 Cong. Rec. S17799 (daily ed. Oct. 8, 1992).

From the context of the House action, it is apparent that the elimination of the modifier "technically" from the amendment does not restrict the scope of certification defects covered by the amended, ameliorative statute. To the contrary, the main concern of the House appears to have been that the word "technically" might be construed too narrowly. *See* H.R. Rep. No. 102-1006, at 28 (1992), *reprinted in* 1992 U.S.C.C.A.N. 3921, 3937 (quoted in full, *supra*, at 8). The deletion of the modifier maintained the jurisdictional requirement of a certification for a claim afflicted with "a substantive defect, such as bad faith, fraud, or reckless and intentional disregard of the statutory certification requirements," but it eliminated jurisdictional consideration of certifications in the circumstances of the technical defects listed as examples in the House Report. *Id.*

In short, for purposes of this case, the legislative history of the 1992 amendment to Section 605(c)(6) demonstrates that the terms "[a] defect in the certification" and "defective certification" include "missing certifications when two or more claims not requiring certification are deemed by the court or board to be a larger claim requiring certification." *Id.*

The FAR is applicable to Engineered Demolition's contract, however, and a provision of the FAR rests on a construction of the term "defective certification" that contravenes the

---

[9]As noted previously, the CDA was amended in 1994 to raise the threshold for certifying claims to $100,000 from $50,000. *See* Federal Acquisition Streamlining Act of 1994, Pub. L. No. 103-355, Title II, § 2351(b), 108 Stat. 3243, 3322 (1994).

foregoing interpretation. In defining "defective certification," the FAR provides that "[f]ailure to certify shall not be deemed to be a defective certification." FAR § 33.201 (last sentence of the definition). Insofar as this provision fails to adhere to the interpretation of the statutory language derived from the legislative context and history, it will be disregarded for the reasons that follow.

"The FAR is prepared, issued, and maintained, and the FAR System is prescribed, jointly by the Secretary of Defense, the Administrator of General Services, and the Administrator, National Aeronautics and Space Administration, under their several statutory authorities." FAR § 1.103(b). *See also* FAR § 1.201-1(a) ("Subject to the authorities discussed in 1.103, revisions to the FAR will be prepared and issued through the coordinated action of two councils, the Defense Acquisition Regulations Council (DAR Council) and the Civilian Agency Acquisition Council (CAA Council).").

This Court must determine whether the last sentence of the definition of "defective certification" in Section 33.201 quoted above is entitled to judicial deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Chevron* specifies a two-step process of statutory interpretation for laws that are administered by a particular federal agency. The first step calls upon the court to determine whether there is a plain meaning of the statute or whether Congress's intent is otherwise clear; the second step applies if the statute is silent or ambiguous and requires the court to give deference to a "permissible construction" of the statute by the agency charged with administering it. *Id*. at 842-43. In this instance, because the statute is ambiguous, the first step is inapplicable, and the second step of *Chevron* should be considered. And, ordinarily, the FAR is accorded deference by this Court. *See Brownlee v. Dyncorp*, 349 F.3d 1343, 1354 (Fed. Cir. 2003) ("[W]e have specifically held that the provisions of [the] FAR are entitled to *Chevron* deference."). However, in this instance the relevant sentence of the FAR bears directly on jurisdiction over a private right of action against the government where the legislation expressly establishes this Court or agency boards of contract appeals as the adjudicator of the rights of the parties. Thus, a key question is whether Congress has charged an agency with responsibility for implementing the certification provisions through binding regulations.

The statutory language providing that this Court and agency boards of contract appeals are accorded responsibility for applying the certification requirements explicitly refers to the jurisdictional aspect of these requirements. *See* 41 U.S.C. § 605(c)(6) ("A defect in the certification of a claim shall not deprive a court or an agency board of contract appeals of jurisdiction over that claim," quoted more fully, *supra*, at 5-6.). The situation here is analogous to that "[i]n *Adams Fruit Co. v. Barrett*, [494 U.S. 638 (1990)], [where] a unanimous [Supreme] Court held that *Chevron* did not require deference to be given to the Department of Labor's interpretation of a statute because Congress had expressly contemplated that the judiciary would be the preeminent authority respecting private actions brought under the statute: 'A precondition to deference under *Chevron* is a congressional delegation of administrative authority.'" Charles Lettow, *Looking At Federal Administrative Law With A Constitutional Framework In Mind*, 45 Okla. L. Rev. 5, 29 (1992) (quoting *Adams Fruit*, 494 U.S. at 649). Accordingly, in these

circumstances, the agencies promulgating the FAR are not accorded *Chevron* deference insofar as the definition of "defective certification" in FAR § 33.201 is concerned. *See Adams Fruit*, 494 U.S. at 649-50 ("This delegation [by Congress to the Secretary of Labor to administer a statute] . . . does not empower the Secretary to regulate the scope of the judicial power vested by the statute."); *Fabil Mfg. Co. v. United States*, 237 F.3d 1335, 1341 (Fed. Cir. 2001) ("Customs [Service] cannot establish the burden of proof in judicial proceedings; that task is for the judiciary or the Congress.") (citing *Adams Fruit*, 494 U.S. at 649)); *Dico, Inc. v. Diamond*, 35 F.3d 348, 352 (8th Cir. 1994) ("that the EPA is given an opportunity to resolve the matter prior to litigation does not alter the language of [the statute] which 'has expressly established the Judiciary . . . as the adjudicator of private rights of action arising under the [section]'") (quoting *Adams Fruit*, 494 U.S. at 649)).

The last sentence of the definition of "defective certification" in FAR § 33.201 is overbroad and invalid insofar as it would treat as jurisdictional defects those errors in certifications of claims of the types cited in the legislative history of Section 605(c)(6), including particularly "missing certifications when two or more claims not requiring certification are deemed by the court or board to be a larger claim requiring certification." *Supra*, at 8 (quoting more fully H.R. Rep. No. 102-1006, at 28 (1992), *reprinted in* 1992 U.S.C.C.A.N. 3921, 3937). Although this Court has previously relied on FAR § 33.201 in several cases, those decisions concerned a failure to submit a certification for a single claim in excess of $100,000. *See Scan-Tech Sec., L.P. v. United States*, 46 Fed. Cl. 326, 339-40 (2000); *Medina Constr*., 43 Fed. Cl. at 547; *see also Hamilton Secs. Advisory Servs., Inc. v. United States*, 43 Fed. Cl. 566, 576 (1999) (holding that contractor's letters did not constitute a claim under the CDA in part because there was a complete absence of certification of a single claim over $100,000). There was no contention in those cases that the contractor made a reasonable mistake by not certifying two or more small claims that arguably constitute segments of a larger unitary claim. Thus, these cases are distinguishable.

Here, based on an interpretation of the ambiguous language of 41 U.S.C. § 605(c)(6) that draws upon and is guided by the legislative history of the 1992 amendments to the statute, even if Engineered Demolition's claim relating to overhead and Greenfield's claim based on unused railcars were deemed segments of the same claim, the Court would retain jurisdiction of the case pursuant to 41 U.S.C. 605(c)(6) and would deny the government's motion to dismiss. The only consequence of the absence of certification in such circumstances would be that the Court would require Engineered Demolition to certify the separate claims before the Court issued its final decision, pursuant to 41 U.S.C. § 605(c)(6).

In short, the government's motion to dismiss must be denied solely on grounds of statutory construction of 41 U.S.C. § 605(c)(6), disregarding the attendant overbreadth of the last sentence of the definition of "defective certification" in FAR § 33.201. However, to guide future proceedings in this case, this Court will also address whether the claims at issue were properly separate claims or were in fact segments of one claim for purposes of the CDA.

*B. Separate Claims Versus a Unitary Claim*

The CDA recognizes that more than one claim might arise from a single government contract and that a contractor may file "two or more suits" either in this Court or before an agency board of contract appeals. *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990) (quoting 41 U.S.C. § 609). "[I]f the claims as presented to the CO will necessitate a focus on a different or unrelated set of operative facts as to each claim, then separate claims exist that avoid the certification requirement." *Id.*

In the instant case, Engineered Demolition's excavation claim and Greenfield's transportation claim stem from the same trunk but constitute two different factual branches. Each branch arises out of factual predicates that are separate and apart from each other, and each branch is strong enough independently to support a separate claim. Whereas Engineered Demolition's claim involves only the quantity shortfall, Greenfield's claim "will necessitate a focus on a different or unrelated set of operative facts," including the reasonableness of the estimate of the number of railcars ordered and whether Greenfield attempted to mitigate its loss. *Placeway Constr.*, 920 F.2d at 907. Proof of Engineered Demolition's claim would not be sufficient to prove Greenfield's claim. Moreover, in this case "there are separate contracts, embodying separate obligations, between" different parties. 18 Charles Alan Wright, et al., *Federal Practice and Procedure* § 4408 at 188 (2d ed. 2002). Engineered Demolition entered into a contract with the United States pursuant to which Engineered Demolition would excavate soil, and Greenfield entered into a subcontract with Engineered Demolition pursuant to which Greenfield would transport the soil. These claims are separate and independent in nature, and because each is less than $100,000, the certification requirement does not apply.

Finally, this case is factually different from *Warchol Construction Co. v. United States*, 2 Ct. Cl. 384 (1983), in which the Court found that site claims consisting of change orders for excavation, transportation, and paving were actually a single, unitary claim. In that case, all of the damages focused exclusively on the differing site condition itself. In the instant case, Greenfield's claim focuses on divergent factual predicates.

## CONCLUSION

For the reasons stated, the Court holds that it has jurisdiction over Engineered Demolition's claims and the claim Engineered Demolition brought forward on Greenfield's behalf. Accordingly, the government's motion to dismiss is DENIED. The defendant is ordered to respond to the Complaint within the time specified by RCFC 12(a)(2)(A).

IT IS SO ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge