No. 03-2231C
(Judge Lettow)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

ENGINEERED DEMOLITION, INC.,

Plaintiff,
v.

THE UNITED STATES,

Defendant.

---

**DEFENDANT'S MOTION FOR PARTIAL DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR SUMMARY JUDGMENT**

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

FRANKLIN E. WHITE, JR.
Assistant Director

ANDREW P. AVERBACH
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, DC 20530
Tel. (202) 353-0527
Fax. (202) 305-2118

Of Counsel:
Beth Pitrolo
U.S. Army Corps of Engineers

September 30, 2005

Attorneys for Defendant

# TABLE OF CONTENTS


TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I. Applicable Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

A. Legal Standard For Dismissal Pursuant To RCFC12(b)(1) . . . . . . . . . . . . 8

B. Legal Standard For Granting Summary Judgment Pursuant To RCFC 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II. Summary Judgment Is Warranted With Respect To Those Portions Of The Complaint Over Which The Court Has Jurisdiction, And The Remainder Should Be Dismissed For Lack Of Subject Matter Jurisdiction . . . . 10

A. Count I Fails Because The Contract Contains A Changes Clause . . . . . . 10

B. ENDE Cannot Establish Liability Under Counts II Or III Because It Has Disavowed The Only Portion Of These Counts Over Which The Court Possesses Jurisdiction . . . . . . . . . . . . . . 11

C. ENDE Cannot Establish Liability Under Count IV . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

**CASES**

Al Munford, Inc. v. United States,
30 Fed. Cl. 185 (1993) . . . . . . . . . . 12

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . 9, 10

Coastal Industries, Inc. v. United States,
27 Fed. Cl. 713 (1993) . . . . . . . . . . 12

Connor Bros. Constr. Co. v. United States,
65 Fed. Cl. 657 (2005) . . . . . . . . . . 14

Crown Laundry & Drycleaners, Inc. v. United States,
29 Fed. Cl. 506 (1993) . . . . . . . . . . 17, 18

Dairyland Power Cooperative v. United States,
16 F.3d 1197 (Fed. Cir. 1994) . . . . . . . . . . 10

Dynalectron Corp. v. United States,
4 Cl. Ct. 424 (1984) . . . . . . . . . . 9

Fidelity Construction Co. v. United States,
700 F.2d 1379 (Fed. Cir. 1983) . . . . . . . . . . 9

Federal Group, Inc. v. United States,
2005 WL 1797042, No. 02-70C (Fed. Cl. July 29, 2005) . . . . . . . . . . 18

Golden Pacific Bancorp v. United States,
15 F.3d 1066 (Fed. Cir. 1994) . . . . . . . . . . 9

Hi-Shear Technology Corp. v. United States,
53 Fed. Cl. 420 (2002), aff'd, 356 F.3d 1372 (Fed. Cir. 2004) . . . . . . . . . . 17

McCauley v. United States,
38 Fed. Cl. 250 (1997) . . . . . . . . . . 8, 9

Rice v. United States,
31 Fed. Cl. 156 (1994), aff'd, 48 F.3d 1236 (Fed. Cir. 1995) . . . . . . . . . . 9

Rumsfeld v. Applied Companies, Inc.,
325 F.3d 1328 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Sharman Co. v. United States,
2 F.3d 1564 (Fed. Cir.1993), ovverruled on other grounds,
Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . 12

Sweats Fashions, Inc. v. Pannill Knitting Co.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Mitchell,
445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**STATUTES**

41 U.S.C. § 605(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**REGULATIONS**

FAR § 52.237-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 17

FAR § 52.243-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10, 13

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ENGINEERED DEMOLITION, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03-2231C |
| v. | ) | (Judge Lettow) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR PARTIAL DISMISSAL FOR LACK OF JURISDICTION AND FOR SUMMARY JUDGMENT**

Pursuant to Rules 12(b)(1) and 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss portions of plaintiff's complaint for lack of subject matter jurisdiction and grant summary judgment in favor of the United States with respect to the remainder of the complaint because there are no genuine issues of material fact and the Government is entitled to summary judgment as a matter of law. In support of this motion, we rely upon the pleadings, the following brief, the materials contained in the appendix filed in support of our motion ("Def. App. __"), and defendant's proposed findings of uncontroverted facts ("DPFUF") filed in conjunction with this brief pursuant to RCFC 56(h)(1).

As set forth in detail below, most of plaintiff's claims are premised upon misreadings of the contract between the parties. Further, in response to our interrogatories plaintiff has expressly abandoned the factual basis upon which both its request for an equitable adjustment and its complaint were based and now relies upon theories that were never submitted to the contracting officer, are beyond the jurisdiction of the Court, and were not included in its complaint. Even if the Court possesses jurisdiction to entertain plaintiff's new claims, and even

if the complaint is construed to include these new claims, the claims fail both as a matter of fact and as a matter of law. Plaintiff's scattershot approach to litigation should not be condoned, and dismissal and/or summary judgment is warranted.

**DEFENDANT'S BRIEF**

**ISSUES PRESENTED**

1. Whether dismissal for lack of subject matter jurisdiction or summary judgment in favor of the Government is warranted with respect to plaintiff's claim for an equitable adjustment based upon a change where plaintiff never asserted entitlement to an adjustment based upon the alleged change to the contracting officer.

2. Whether summary judgment is warranted in favor of the Government with respect to plaintiff's claims for an equitable adjustment where the "change" upon which plaintiff bases its request was proposed voluntarily by plaintiff.

3. Whether summary judgment is warranted in favor of the Government with respect to plaintiff's claims of negligent estimation where plaintiff merely alleges that the Government failed to predict that it would implement the changes for which plaintiff seeks an equitable adjustment.

4. Whether plaintiff can assert a theory of negligent estimation that was not included in its complaint and was not submitted to the contracting officer.

5. Assuming plaintiff can assert a theory of negligent estimation not included in its complaint and not submitted to the contracting officer, whether summary judgment is warranted in favor of the Government with respect to plaintiff's claims of negligent estimation of the size of a pile where plaintiff had an opportunity to perform its own estimate but elected not to do so.

6. Assuming plaintiff can assert a theory of negligent estimation not included in its complaint and not submitted to the contracting officer, whether summary judgment is warranted in favor of the Government with respect to plaintiff's claims of negligent estimation of the size of a pile where the variance between the estimate and actual size was only 17 percent of the estimated amount.

## STATEMENT OF THE CASE

### I. Nature Of The Case

Plaintiff Engineered Demolition, Inc. ("ENDE") purports to bring this action pursuant to the Contract Disputes Act of 1978, seeking to recover the total amount of $107,987, plus interest. ENDE claims entitlement to this sum (which includes the "pass-through" claim of its subcontractor, Greenfield Logistics, LLC) based upon the Goverment's alleged breach of a contract for the removal, transportation, and disposal of contaminated soils and/or as an equitable adjustment to the contract.

### II. Statement Of Facts

On July 24, 2001, the U.S. Army Corps of Engineers ("USACE" or the "Corps") issued solicitation no. DACW43-01-R-0702 for the removal, transportation, and disposal of radiologically contaminated soil in the "main pile" at the Hazelwood Interim Storage Site ("HISS") in St. Louis County, Missouri. Def. App. 22, 27. The solicitation sought a contractor to perform the last of four contracts for the removal of material from the HISS. Def. App. 74. ENDE had been the contractor on each of the first three contracts. Def. App. 74.

Section B of the solicitation, the bidding schedule, indicated that the quantity of material to be removed from the main pile (item 8) was estimated to be 8,080 cubic yards and requested a

unit price and a dollar amount for this line item. Def. App. 23. The bidding schedule also sought a unit price and a dollar amount for the disposal of an estimated 10,500 cubic yards of material. Def. App. 23.[1] The notes to the bidding schedule advised that "[a]ll quantities shown on the SUPPLIES OR SERVICES AND PRICE/COSTS are estimated quantities except when the unit is shown as Lump Sum." Def. App. 24.

The solicitation also included FAR § 52.237-1, "Site Visit" (April 1984), and stated:

> Offerors or quoters are urged and expected to inspect the site where services are to be performed and to satisfy themselves regarding all general and local conditions that may affect the cost of contract performance, to the extent theat the information is reasonably obtainable. In no event shall failure to inspect the site constitute grounds for a claim after contract award.

Def. App. 28. William Welch, ENDE's project manager on the contract, acknowledged that ENDE understood that it had the right to conduct a survey of the site prior to bidding and that ENDE was never instructed not to perform a survey. Def. App. 73 (Tr. 65:16-24). ENDE elected not to perform an estimate of the size of the main pile prior to award. Def. App. 18-19 (plaintiff's response to request for production of documents no. 5).

ENDE was awarded contract no. DACW43-01-C-0426 on August 31, 2001. Def. App. 29. The total contract price was $2,301,894.67, including five items to be paid upon a lump sum basis (totaling $588,224.67), an estimated $395,920.00 for removal of the material in the main pile (based upon 8,080 cubic yards at $49 per cubic yard), and an estimated $1,317,750.00 (based upon 10,500 cubic yards at $125.50 per cubic yard) for disposal of the material by rail transportation. Def. App. 31. With respect to these two line items (which were designated as

[1] The amount to be disposed was anticipated to be larger than the amount to be excavated because, once uncompacted, the radiologically contaminated soil occupies more space.

unit price, as opposed to lump sum, payment items), the contract specified that payment would be made upon the basis of the number of cubic yards removed or disposed. Def. App. 35-36

The contract incorporated FAR § 52.243-1 ("Changes– Fixed Price (Aug. 1987) – Alternate II (Apr. 1984")), and provided:

> (a) The Contracting Officer may at any time, by written order, and without notice to the sureties, if any, make changes within the general scope of this contract in any one or more of the following:
>
> (1) Description of services to be performed.
> (2) Time of performance (i.e., hours of the day, days of the week, etc.).
> (3) Place of performance of the services.
> (4) Drawings, designs, or specifications when the supplies to be furnished are to be specially manufactured for the Government in accordance with the drawings, designs, or specifications.
> (5) Method of shipment or packing of supplies.
> (6) Place of delivery.
>
> (b) If any such change causes an increase or decrease in the cost of, or the time required for, performance of any part of the work under this contract, whether or not changed by the order, the Contracting Officer shall make an equitable adjustment in the contract price, the delivery schedule, or both, and shall modify the contract.
>
> (c) The Contractor must assert its right to an adjustment under this clause within 30 days from the date of receipt of the written order. However, if the Contracting Officer decides that the facts justify it, the Contracting Officer may receive and act upon a proposal submitted before final payment of the contract.
>
> (d) If the Contractor's proposal includes the cost of property made obsolete or excess by the change, the Contracting Officer shall have the right to prescribe the manner of the disposition of the property.
>
> (e) Failure to agree to any adjustment shall be a dispute under the Disputes clause. However, nothing in this clause shall excuse the Contractor from proceeding with the contract as changed.

Def. App. 38-40.

Work began under the contract on or about September 6, 2001. Def. App. 44. On October 1, 2001, the contracting officer's representative, David E. Mueller, sent ENDE a "Memorandum for Record" reflecting a coordination meeting held on September 27, 2001. ENDE was requested to review the memorandum and provide any comments. Def. App. 45. Among other things, the memorandum reflects USACE's instruction that "the low area cause[d] by over excavation on the previous contract w[ill] be filled using material from the pile." Def. App. 46. As ENDE has acknowledged, this instruction constituted "official word from the government" that a hole created during a previous phase of the project should be filled with material taken from the main pile. Def. App. 71 (Tr. 31:20-32:20). This arrangement was originally suggested by ENDE's project manager, Mr. Welch, and was approved by David Mueller, the contracting officer's representative. Def. App. 75-76.

ENDE completed the project as instructed and received compensation (beyond the lump sum items) for removing 6,677 cubic yards from the main pile (at a price of $49.00 per cubic yard, for a total of $327,173.00) and for disposing of 7,338.72 cubic yards by rail transportation (at a price of $125.50 per cubic yard, for a total of $921,009.36). Def. App. 43, 76. Of the 6,677 cubic yards excavated, 762 were used to fill a previously excavated hole. Def. App. 75-76. ENDE received compensation for excavating these 762 cubic yards but did not receive compensation for transporting it. Def. App. 72 (Tr. 37:4-15), 76. ENDE acknowledged receipt of a contract modification reflecting the excavation of 6,677 cubic yards and disposal of 7,338.72 cubic yards but "reserve[d] all rights to seek equitable adjustment" pertaining to this modification. Def. App. 41, 43.

By letter dated February 10, 2002, ENDE informed Mr. Mueller that the quantity of material removed and transported had "fallen substantially short of the estimated quantity provided by USACE" and sought an equitable adjustment of $161,729.16. Def. App. 49-50. The USACE denied this request on April 18, 2002. Def. App. 51.

By letter dated July 17, 2002, ENDE supplemented its prior request for an equitable adjustment, asserting that the contract should be reformed to include a "VEQ" [Variation in Estimated Quantities] or that an equitable adjustment was warranted pursuant to other clauses of the contract. Def. App. 52. On September 25, 2002, ENDE's counsel, Craig Kosonen, further supplemented ENDE's request, asserting, among other things, that USACE had breached the contract. Mr. Kosonen explained to the contracting officer that the relevant issue was not the size of the pile but, rather, the USACE's last-minute decision to change the elevation to which excavation would be necessary:

> Should it be suggested, by the way, that ENDE could have protected itself by conducting its own survey, which the contract entitled us to do, it must be recognized that such would have accomplished nothing. The problem was not with the size of the pile, per se, but with the fact that it was not until the final week of the operation that the government decided that the final grade would be determined with respect to the elevation of the haul road, not the lower elevation represented by the bottom of the so-called "pond area," the result of in-hind-sight "over excavation" by ENDE during pursuance of the work under an earlier HISS contract, which excavation was at the express direction of the Corps' representative, Brenda Bienkowski.

Def. App. 61-62.

By letter dated September 25, 2002, the USACE issued a final determination denying ENDE's revised and supplemented request for an equitable adjustment. Def. App. 63; see also Def. App. 68.

ENDE commenced this lawsuit on September 26, 2003, asserting three grounds for relief. In Count I, ENDE contends that the contract did not contain a "changes" clause and that USACE's changes to the contract – "changing the final grade elevation and directing that ENDE deposit material into a depression created during an earlier and similar contract between USACE and ENDE," Complaint ¶ 24 – were unauthorized. In Counts II and III, ENDE seeks an equitable adjustments arising from these changes (under the theory that a changes clause must be implied in fact or at law). Finally, in Count IV, ENDE asserts that the USACE breached its duty to provide accurate estimates by "not taking into account anticipated changes in the final grade elevation and the planned deposition of material into a depression created during an earlier and similar contract at the site." Compl. ¶ 35.

## ARGUMENT

### I. Applicable Legal Standards

#### A. Legal Standard For Dismissal Pursuant to RCFC12(b)(1)

This Court may grant a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) when, in view of the record presented, "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief.'" McCauley v. United States, 38 Fed. Cl. 250, 262-63 (1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Although the factual allegations, as pled, must be presumed true and viewed in the light most favorable to the plaintiff, the burden of establishing the Court's

jurisdiction falls squarely upon the plaintiff. McCauley, 38 Fed. Cl. at 262-63; Rice v. United States, 31 Fed. Cl. 156, 161 (1994), aff'd, 48 F.3d 1236 (Fed. Cir. 1995) (table).

This Court is a court of limited jurisdiction. Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428 (1984). Its jurisdiction to entertain claims and to grant relief depends upon, and is circumscribed by, the extent to which the United States has waived its sovereign immunity. United States v. Testan, 424 U.S. 392, 399 (1976). The waiver of sovereign immunity, and hence the consent to be sued, must be expressed unequivocally and cannot be implied. Id. Jurisdiction in this Court must be construed strictly and all conditions placed upon such a grant must be satisfied before the Court may accept jurisdiction. United States v. Mitchell, 445 U.S. 535, 538 (1980). As the United States Court of Appeals for the Federal Circuit has stated, "[i]n construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." Fidelity Construction Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir. 1983).

**B. Legal Standard For Granting Summary Judgment Pursuant to RCFC 56(c)**

Summary judgment must be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." RCFC 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Golden Pacific Bancorp v. United States, 15 F.3d 1066, 1070 (Fed. Cir. 1994). A "material fact" is one "that might affect the outcome of the suit under the governing law," and "summary judgment will not lie if the dispute about a material fact is 'genuine '" Anderson, 477 U.S. at 248. A dispute is genuine only if the evidence is such that a reasonable jury could return

a verdict in favor of the nonmoving party. Anderson, 477 U.S. at 248; Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987).

As the moving party, the defendant may discharge its burden by demonstrating an absence of evidence as to an essential element of plaintiff's cause of action. Celotex, 477 U.S. at 322-25. If defendant makes its threshold showing, the burden shifts to the plaintiff to adduce evidence sufficient to create a genuine issue of material fact. Failure to make this evidentiary showing is fatal to plaintiff's claim and will entitle the movant to judgment as a matter of law. Dairyland Power Cooperative v. United States, 16 F.3d 1197, 1201 (Fed. Cir. 1994).

## II. Summary Judgment Is Warranted With Respect To Those Portions Of The Complaint Over Which The Court Has Jurisdiction, And The Remainder Should Be Dismissed For Lack Of Subject Matter Jurisdiction

### A. Count I Fails Because The Contract Contains A Changes Clause

In Count I, ENDE asks the Court to find the Government in breach of its obligation to supply "perfect tender" because contract between the parties did not contain a changes clause. Compl. ¶¶ 22-24. This argument fails because, contrary to ENDE's contention, the contract does in fact contain a changes clause, Def. App. 38-40 (FAR § 52.243-1, "Changes– Fixed Price (Aug. 1987) – Alternate II (Apr. 1984"), which expressly permits the contracting officer, "at any time, by written order . . . , [to] make changes within the general scope of this contract." ENDE's "perfect tender" argument therefore fails.

B. ENDE Cannot Establish Liability Under Counts II Or III Because It Has Disavowed The Only Portion Of These Counts Over Which The Court Possesses Jurisdiction

In Counts II and III, ENDE seeks equitable adjustments, pursuant to a changes clause that it contends should be implied either in fact or in law,[2] based upon the USACE's directives to (1) "chang[e] the final grade elevation" and (2) deposit material into a depression created during an earlier and similar contract at the site. Compl. ¶¶ 26, 31.

ENDE cannot recover an equitable adjustment based upon either of these alleged changes. To the extent ENDE relies upon USACE's first directive it has identified – to "change the final grade elevation" [3]– it has expressly disavowed this theory. In responding to our interrogatories, ENDE acknowledged that "[u]pon further review of the relevant facts and documents, [it] no longer takes the position regarding the finish grade set forth in paragraphs 14 and 15 of the Complaint." Def. App. 12. To the extent counts II and III are based upon this directive, summary judgment is therefore warranted.

To the extent ENDE seeks an equitable adjustment pursuant to its second theory – namely, USACE's direction to deposit material into a previously created depression – its claims fail for several reasons. First, the Court lacks jurisdiction to consider this segment of ENDE's claim. As a jurisdictional prerequisite to filing suit in the Court of Federal Claims, the contractor

---

[2] As previously noted, the changes clause is in fact part of the contract. Def. App. 38-40. As a result, it does not need to be implied in fact or at law.

[3] This alleged directive is described in paragraph 14 of its complaint, in which ENDE alleges that "on October 11, 2001, the Contracting Officer's Representative (COR) decided that the final elevation for the finish grade would be based on the elevation of the haul road, an elevation that was substantially higher than ENDE's expectation and an elevation that was substantially higher than the elevation disclosed in the Contract documents."

must first present the claim to the contracting officer. 41 U.S.C. § 605(a); Sharman Co. v. United States, 2 F.3d 1564, 1568-69 (Fed. Cir. 1993), ovverruled on other grounds, Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995). Although the Contract Disputes Act does not define the term "claim," "the critical issue is whether the contractor's submissions to the contracting officer, taken together, provided adequate notice of the basis and amount of the claim." Al Munford, Inc. v. United States, 30 Fed. Cl. 185, 190 (1993); see, e.g., Coastal Industries, Inc. v. United States, 27 Fed. Cl. 713, 718 (1993) (contractor asserted "basis of claim" where its submittal alleged erroneous specifications and testing errors and provided specific examples of particular contract problems).

Here, ENDE's request for an equitable adjustment (including each of its supplemental requests) does not even mention the USACE's directive to use soil from the main pile to fill a previously created hole (the only remaining change upon which ENDE's claim for an equitable adjustment is based). As the September 25, 2002 letter from ENDE's general counsel, Craig Kosonen, indicates, the only "change" that ENDE identified to the contracting officer in its request for an equitable adjustment was the now-abandoned allegation of change in the finish grade:

> The problem was not with the size of the pile, per se, but with the fact that it was not until the final week of the operation that the government decided that the final grade would be determined with respect to the elevation of the haul road . . . .

Def. App. 62 ENDE never requested that the contracting officer consider the "change" upon which its claim is now based and, for this reason alone, the Court lacks jurisdiction to consider this portion of Counts II and III.[4]

Second, even if the Court possessed jurisdiction to entertain this portion of ENDE's request for an equitable adjustment, its claim would fail under the express terms of the contract. As noted, and contrary to ENDE's assertions, the contract contains a changes clause, FAR § 52.243-1, which expressly requires that the contractor "assert its right to an adjustment under this clause within 30 days from the date of receipt of the written order." Def. App. 38-40. Here, the record is entirely devoid of any complaint or request for an equitable adjustment stemming from the USACE's instruction concerning filling a previously created depression, let alone one made within thirty days of the change (which was communicated in writing by no later than October 1, 2001, Def. App. 45, 47, 71-72 (Tr. 31:20-32:20)). Indeed, ENDE's own characterization of its claim from its general counsel makes clear that, even in September 2002, when it explained the basis for its request for an equitable adjustment, it was not asserting entitlement based upon the instruction to fill a previously created depression with material from the main pile. Instead, it was raising its (since abandoned) challenge to the directive concerning the finish grade. Def. App. 61-62. Thus, even assuming jurisdiction, ENDE's claim would fail

[4] We have moved for summary judgment with respect to counts II and III because part of the claim – that pertaining to the alleged change in the finish grade elevation – was submitted to the contracting officer and has now been abandoned. The remainder of the claim should be dismissed for lack of subject matter jurisdiction for the reasons stated in the text. In the alternative, and as set forth in the remainder of our argument concerning counts II and III, summary judgment is warranted with respect to the portion of counts II and III based upon the directive to fill a previously excavated hole with soil from the main pile.

because it asserts entitlement based on a change never raised before the contracting officer during the time expressly mandated by the changes clause.

Third, even if such a claim had been asserted, the evidence in the record clearly demonstrates that the "directive" about which ENDE now complains (to fill a previously created depression with material from the main pile) was in fact the result of a suggestion proposed by ENDE's project manager, William Welch, so that ENDE could rectify a problem that arose during its performance of one of the prior HISS contracts. As Mr. Mueller has explained in his declaration, the request to fill the overexcavated material with material from the main pile "originated with ENDE's site representative, Mr. William Welch, and was approved" by Mr. Mueller upon behalf of the Corps. As a matter of law, ENDE is not entitled to an equitable adjustment based upon a constructive change where it volunteered to perform the work and never complained about having to perform it. See Connor Bros. Constr. Co. v. United States, 65 Fed. Cl. 657, 679 (2005) (alleged constructive change "must not have been volunteered") (citing Calfon Constr., Inc. v. United States, 17 Cl. Ct. 171, 177 (1989)). This is true regardless of the reason that ENDE made the request and, even if, as ENDE will likely contend, it was compelled to create the depression as part of its performance of a prior contract. Any complaints ENDE may have concerning what it was directed to do during the performance of a prior contract should have been pursued as part of a claim under that contract, and not as a belated request for an equitable adjustment under the contract at issue in this case.

Finally, there is no dispute that, contrary to its assertion in paragraph 17 of the complaint, ENDE was paid for excavating the material from the main pile that it placed in the depression and was paid in full for the work it actually performed. The only item for which ENDE did not

receive payment was for transporting material that was not actually removed from the site. Def. App. 76. As a result, even if the Court could consider this portion of ENDE's claim and even if the claim were not barred because ENDE proposed and assented to the directive about which it now complains, summary judgment would still be warranted in favor of the United States with respect to that portion of ENDE's request for an equitable adjustment related to a deficiency in the amount it was paid for the excavation (as opposed to disposal) of contaminated material.

C. ENDE Cannot Establish Liability Under Count IV

In count IV of its complaint, ENDE asserts that the USACE negligently prepared its estimate of the variable quantity line items in the contract by failing to take into account two items: first, "anticipated changes in the final grade elevation," and, second, the "planned deposition of material into a depression created during an earlier and similar contract at the site." Compl. ¶ 35. These claims likewise fail for a variety of reasons, many of which are addressed above in connection with counts II and III.

As described above, ENDE has abandoned its theory concerning "changes in the final grade elevation," Def. App. 12, which theory forms the basis for the first component of ENDE's negligence claim in paragraph 35 of the complaint. The Government cannot be negligent for failing to take into account a change that ENDE no longer seeks to prove took place. As a result, any negligence must focus, as ENDE alleges in its complaint, upon the failure to take into account in preparing the estimate the "deposition of material into a depression created during an earlier and similar contract at the site." Compl. ¶ 26.

Thus limited, such a claim is fatally flawed. First, it is not a claim for negligently estimating the size of the pile to be removed (an allegation ENDE has raised in its response to

our interrogatories, Def. App. 12-13, but has not raised in its complaint and for which it has never sought leave to amend). Instead, it is a claim for negligently failing to predict that the size of the pile would be decreased as a result of future change orders. This allegation is simply a restatement of ENDE's request for an equitable adjustment and is properly considered solely in connection with Counts II and III.

Second, even if the Court were to read ENDE's complaint to include the allegation that the size of the pile was negligently estimated, ENDE could not recover under such a theory because such a claim would be beyond the Court's jurisdiction. Indeed, the negligence theory that ENDE now espouses (as compared to the theories of negligence originally asserted in its complaint) was never presented to the contracting officer as basis for relief. As noted, Mr. Kosonsen's letter explaining the basis for ENDE's claim makes clear that its request was not based upon the size of the pile but upon the alleged change in the finish grade:

> Should it be suggested, by the way, that ENDE could have protected itself by conducting its own survey, which the contract entitled us to do, it must be recognized that such would have accomplished nothing. The problem was not with the size of the pile, per se, but with the fact that it was not until the final week of the operation that the government decided that the final grade would be determined with respect to the elevation of the haul road, not the lower elevation represented by the bottom of the so-called "pond area," the result of in-hind-sight "over excavation" by ENDE during pursuance of the work under an earlier HISS contract, which excavation was at the express direction of the Corps' representative, Brenda Bienkowski.

Def. App. 61-62. Having expressly advised the contracting officer that the size of the pile was not the problem, ENDE cannot now raise before this Court its allegation, articulated in response to our interrogatories, that the size of the pile was negligently estimated. Such a negligence

claim was never presented to the contracting officer and, in the form that ENDE now advances it, is beyond the jurisdiction of the Court.

Third, even assuming that the Court possesses jurisdiction over the current iteration of ENDE's negligent estimation claim, ENDE was expressly placed on notice that the estimated cubic yardage upon which it prepared its bid was merely an estimate, not a guarantee, and that it had an opportunity to inspect the premises. Indeed, the solicitation expressly incorporated FAR § 52.237-1, "Site Visit" (April 1984), which provides:

> Offerors or quoters are urged and expected to inspect the site where services are to be performed and to satisfy themselves regarding all general and local conditions that may affect the cost of contract performance, to the extent theat the information is reasonably obtainable. In no event shall failure to inspect the site constitute grounds for a claim after contract award.

Def. App. 28. ENDE was at the HISS site for the performance of the first three HISS contracts, A76, and acknowledges that it was afforded an opportunity to perform its own survey prior to bidding but chose not to do so, Def. App. 18-19 (plaintiff's response to request for production of documents no. 5). Under the plain terms of the agreement, ENDE cannot now question the accuracy of an estimate that it had the means and opportunity to verify but elected not to.

Fourth, the estimate that the Government provided was not so inaccurate as to warrant a finding of liability. Indeed, it is black-letter law that the Government is not presumed to have a crystal ball in setting estimated quantities. See, e.g., Hi-Shear Technology Corp. v. United States, 53 Fed. Cl. 420, 428-29 (2002), aff'd, 356 F.3d 1372 (Fed. Cir. 2004); Crown Laundry & Drycleaners, Inc. v. United States, 29 Fed. Cl. 506, 519 (1993) ("[T]he mere fact that there is a significant variance between the estimates of work set forth in the contract and the actual work

encountered in performance does not necessarily give rise to liability on the part of the government for the inaccurate estimates set forth in the contract." (citing Medart, Inc. v. Austin, 967 F.2d 579, 580 (1992)). As a result, it is only in those cases in which the Government's estimate is drastically inaccurate that the Government will be found liable for negligently estimating the amount of work to be performed. See, e.g., Rumsfeld v. Applied Companies, Inc., 325 F.3d 1328, 1332 (Fed. Cir. 2003) (estimate contained in the RFP for a requirements contract deemed negligent where it was ten times the amount that the agency actually ordered); compare id. with Federal Group, Inc. v. United States, 2005 WL 1797042, No. 02-70C, at *11 (Fed. Cl. July 29, 2005) (annual variances of between 4% and 19% did not support negligent estimation claim) and Crown Laundry, 29 Fed. Cl. at 519 (agreeing that a variance of as much as fifteen percent between estimated and actual purchases would be reasonable). Here, the estimate of the cubic yardage to be removed – 8,080 cubic yards – exceeded the amount actually excavated – 6,677 – by 1,403 cubic yards, or approximately 17% of the amount estimated.[5] Such a variance is a far cry from the disparities that have been recognized as actionable by this Court and the United States Court of Appeals for the Federal Circuit. See Federal Group, 2005 WL 1797042 at *11 ("This difference is not the tenfold overestimate of Rumsfeld, the 40% underestimate in [Womack v. United States, 182 Ct. Cl. 399, 389 F.2d 793 (1968)], or the 45% overestimate in Crown Laundry.").

Finally, and as described in connection with counts II and III, ENDE cannot recover under a negligence theory for any shortfall in the amount excavated (as opposed to transported) because

[5] ENDE calculates the variance at 18%, comparing the amount actually excavated (8,080 cubic yards) and an estimate contained on certain engineering drawings prepared in July 2001 (6600 square feet). Def. App. 13.

there is no dispute that ENDE has been paid for all the excavation work it performed on the entire main pile, regardless of whether the excavated material was deposited elsewhere at the HISS or disposed of by other means. Def. App. 72 (Tr. 37:4-15), 76. ENDE is not entitled to recover additional sums for its excavation work where the negligence it alleges had no impact upon the amount of excavation work for which ENDE actually received compensation.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant our motion for partial dismissal and for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/Andrew P. Averbach
ANDREW P. AVERBACH
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, DC 20530
Tel. (202) 353-0527
Fax. (202) 305-2118

Of Counsel:
Beth Pitrolo
U.S. Army Corps of Engineers

September 30, 2005

Attorneys for Defendant