IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| Engineered Demolition, Inc.<br>3901 Schreiber Way<br>Coeur d'Alene, ID 83815<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 03-2231C |

**COMPLAINT**

FILED SEP 2 6 2003

COMES NOW the Plaintiff, Engineered Demolition, Inc. (ENDE), by counsel, and hereby asserts the following for its Complaint against the Defendant, the United States of America, acting through and by the United States Army Corps of Engineers (USACE), and states as follows:

**JURISDICTION**

1. This court has jurisdiction over this matter pursuant to the Tucker Act, 28 U.S.C. § 1491. ENDE brings this action pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 601 et seq. (CDA).

2. Pursuant to the CDA, 41 U.S.C. § 609, ENDE brings this action directly to the United States Court of Federal Claims within 12 months of the date that the Contracting Officer's Final Decision was received by ENDE.

**PARTIES**

3. The Plaintiff, ENDE, is a corporation organized and existing under the laws of the State of Minnesota, with its principal place of business in Coeur d'Alene,

Idaho. While highly skilled in its abilities in the areas of demolition and environmental remediation, ENDE is a small 8(a) company.

4. Greenfield Logistics, LLC (Greenfield), although not a formal party to this action, is an entity whose interests were affected in the underlying CDA claim and whose interests are being sponsored and passed through by Plaintiff in this proceeding, as authorized under the CDA. Greenfield is a corporation organized and existing under the laws of the State of Utah, with a principal place of business in Lake Point, Utah.

5. The Defendant is the United States of America, acting through its agency, instrumentality, and/or agent, the USACE.

**NATURE AND SUMMARY OF ACTION**

6. This action is brought by ENDE pursuant to the provisions of the CDA, 41 U.S.C. § 609 seeking recovery against the government for additional costs associated with a shortfall in quantities under a unit price contract for the removal, transportation, and disposal of radiologically contaminated soils stored at the Hazelwood Interim Storage Site (HISS). The bases for entitlement include a number of independent legal theories, including breach of contract, constructive change, and defective estimate under a variable quantities contract. ENDE seeks under-absorbed and/or unrecovered overheads in the aggregate amount of $69,047 and additional costs incurred by Greenfield in the amount of $38,940 to secure rail cars that ultimately were not required due to the quantity shortfall. ENDE's combined prayer for relief, including the sponsorship of the Greenfield claim, totals $107,987, plus interest allowed as per the CDA.

## STATEMENT OF FACTS

7. On August 31, 2001, the USACE awarded ENDE Contract No. DACW43-01-C-0426 (the Contract) for the removal, transportation, and disposal of radiologically contaminated soils stored at the HISS. The Contract was the last of a series of four such contracts between the parties and was intended to complete the removal of all remaining contaminated soils at that particular site.

8. The Contract was for a firm, fixed price of $2,301,894.67. Included in that amount were two variable quantity, unit-priced line items. One was for main pile removal at $49.00 per cubic yard and the other was for transportation and disposal at $125.00 per cubic yard.

9. The Contract documents estimated the quantity of contaminated material to be removed to be 8,080 cubic yards. The Contract documents also estimated the corresponding quantity of contaminated material to be transported to be 10,500 cubic yards given the uncompacted nature of the excavated material. The volumes were determined by survey and were stated to be estimates. Although the Contract documents noted that the contractor could conduct its own survey to verify the quantities, ENDE had no reason to doubt the correctness of the survey information provided by the USACE.

10. The Contract period of performance was fixed at 90 days, with liquidated damages stipulated at $1,165.00 per day for each day that completion was delayed.

11. During negotiations between the parties conducted on August 16 – 17, 2001, ENDE offered its conclusion that 125 rail cars would be required for the expected uncompacted volume and based on ENDE's experience under its previous three contracts


3

at the site. The USACE did not disagree with ENDE's assessment of its expected rail car requirements.

12. The Contract did not include or incorporate by reference any version of the FAR-based "Changes" clause, "Differing Site Conditions" clause, or "Variation in Estimated Quantities" clause. Notwithstanding the physical absence of these clauses, the USACE Preconstruction and Mutual Understanding Meeting minutes for the Contract held on September 6, 2001 include the notation "A VEQ modification at end of contract will adjust the amounts."

13. On September 24, 2001, ENDE entered into a subcontract with Greenfield (the Subcontract) for Greenfield to transport the removed material to a low-level nuclear waste disposal site in Utah. The Subcontract further required Greenfield to furnish a sufficient number of rail cars to accomplish the off-loading and transportation task. In reliance on the USACE survey and on the determination by ENDE that 125 cars would be required, as concurred with by the USACE, Greenfield ordered 125 cars.

14. Work proceeded under both the Contract and the Subcontract in a fairly uneventful manner until late during the period of performance. Thereupon, on approximately October 11, 2001, the Contracting Officer's Representative (COR) decided that the final elevation for the finish grade would be based on the elevation of the haul road, an elevation that was substantially higher than ENDE's expectation and an elevation that was substantially higher than the elevation disclosed in the Contract documents.

15. The COR's action regarding the change in finish grade elevation was unauthorized in that the Contract did not contain a "Changes" clause that would have


4

allowed for such a change to be made. Alternatively, the COR's action regarding the change in finish floor elevation imported the "Changes" clause into the Contract by operation of law so as to grant ENDE a correlative right to an equitable adjustment by virtue of the COR's invocation of this clause.

16. As the result of this change in finish grade elevation, the total quantity of material removed from the main pile was 6,678 c.y., 1,402 c.y. less than that bargained for and expected by ENDE. Of the removed quantity of 6,678 c.y., the USACE directed that ENDE dispose of 773 c.y. in a depression in the grade created during the performance of one of ENDE's earlier contracts at the site.

17. As a result of these USACE directives, ENDE was paid the unit rate under the Contract for excavating 5,905 c.y. (8,080 c.y. less 1,402 c.y. less 773 c.y.). Similarly, for these same reasons, ENDE also was paid the Contract unit rate for transporting 7,670 c.y., rather than the expected quantity of 10,500 c.y. The actual pay quantities for both pay items were approximately 27 percent less than the estimated quantities.

18. The Contract was the only project that ENDE was prosecuting at the time, and, as such, the Contract bore all of ENDE's home office overhead and was expected to provide the only source of profit during this period. Because the quantities for the variably priced items were cut short by the USACE's directives, ENDE was precluded from recovering its full complement of overhead costs.

19. Also because of the quantity shortfalls caused by these USACE directives, Greenfield was left with extra rail cars that it had reasonably secured for Subcontract work but could not profitably employ.

20. Following several rounds of communications between the parties on the matter, ENDE filed a claim for relief dated July 24, 2002 in the aggregate amount of $107,987, which included sponsorship of the Greenfield pass-though claim in the amount of $38,940.

21. By letter dated September 25, 2002, the USACE issued its Final Decision denying ENDE's claim in its entirety (Final Decision incorrectly references an ENDE letter dated July 17, 2002 as ENDE's claim). ENDE received the Final Decision on September 30, 2002.

## COUNT I

### Breach of Contract: Absent a "Changes" Clause, the USACE had no Authority to Modify the Contract Work Scope

22. The Contract did not include any version or variation of the "Changes" clause as set out in the Federal Acquisition Regulation (FAR). The Contracting Officer in its Final Decision dated September 25, 2002 held that the Contract was a "services contract" for which the inclusion of a "Changes" clause was neither recommended nor required.

23. In the absence of a "Changes" clause, the USACE was not empowered to change any material condition of performance. The USACE was required to make "perfect tender" of its performance obligations as per the terms of the Contract, just as ENDE was.

24. The USACE's purported changes to the Contract, *viz.*, changing the final grade elevation and directing that ENDE deposit material into a depression created during an earlier and similar contract between USACE and ENDE were unauthorized given the absence of a "Changes" clause. Such unauthorized directives, in derogation of the


6

USACE's "perfect tender" obligations, constitute breach for which ENDE is entitled to recover Contract breach damages.

WHEREFORE, ENDE respectfully requests that this Court enter an Order on Count I that the USACE breached the Contract and that as a result thereof, ENDE is entitled to recover from the USACE the total amount of $107,987, consisting of $69,047 of under-absorbed and unrecovered overheads and $38,940 on the Greenfield pass-through claim, plus CDA interest at the applicable rate.

## COUNT II

### Equitable Adjustment: USACE's Invocation of "Changes" Clause Authority Confers Right on ENDE to Recover Equitable Adjustment for Corresponding Costs

25. Plaintiff realleges each of the allegations contained in paragraphs 1 through 24 as if fully set forth herein.

26. To the extent that the Court finds that the USACE acted in an authorized capacity in changing the final grade elevation and in directing that ENDE deposit material into a depression created during an earlier and similar contract at the site, then the Court necessarily has engrafted onto and/or implied into the Contract a "Changes" clause that authorizes constructive and directed changes to the work.

27. If such a *de facto* "Changes" clause is in place under the Contract, then ENDE is entitled to an equitable adjustment for additional costs that were incurred by it and its properly sponsored subcontractors in response to the USACE's exercise of "Changes" clause authority.

WHEREFORE, ENDE respectfully requests that this Court enter an Order on Count II that finds that ENDE is entitled to recover from the USACE an equitable

adjustment in the total amount of $107,987, consisting of $69,047 of under-absorbed and unrecovered overheads and $38,940 on the Greenfield pass-through claim, plus CDA interest at the applicable rate.

**COUNT III**

**Equitable Adjustment: ENDE is Entitled to an Equitable Adjustment Under the "Changes" Clause that is Made Part of the Contract by Operation of Law**

28. Plaintiff realleges each of the allegations contained in paragraphs 1 through 27 as if fully set forth herein.

29. Notwithstanding the USACE's labeling of the Contract as a "services contract," the Contract was really a standard construction / environmental remediation contract for which a "Changes" clause not only is recommended but is required.

30. In such circumstances, the "Changes" clause represents a clause that expresses a significant or deeply ingrained strand of public procurement policy such that the clause will be imported by operation of law under the "Christian" doctrine.

31. ENDE is entitled to an equitable adjustment for additional costs that were incurred by it and its properly sponsored subcontractors in response to the USACE's exercise of "Changes" clause authority.

WHEREFORE, ENDE respectfully requests that this Court enter an Order on Count III that finds that ENDE is entitled to recover from the USACE an equitable adjustment in the total amount of $107,987, consisting of $69,047 of under-absorbed and unrecovered overheads and $38,940 on the Greenfield pass-through claim, plus CDA interest at the applicable rate.



8

## COUNT IV

**Breach of Contract: USACE Breached its Duty to ENDE to Provide an Accurate Determination of the Estimated Quantities for the Variable Quantity Line Items**

32. Plaintiff realleges each of the allegations contained in paragraphs 1 through 31 as if fully set forth herein.

33. As the Contracting Officer notes in her Final Decision, the Contract contains two variable quantity line items, one for main pile removal and the other for the disposal and rail car transportation of the contaminated soils. These two Contract line items lay at the heart of the Contract itself in that they constitute the principal Contract activities and they were expected to constitute, by far, the bulk of the overall Contract price.

34. In preparing a variable quantity contract, the Government has a duty to prepare and project the estimated quantities in a non-negligent manner taking into account all information reasonably available to it.

35. Here, by not taking into account anticipated changes in the final grade elevation and the planned deposition of material into a depression created during an earlier and similar contract at the site, the USACE prepared its estimates for the variable quantity line items in a negligent manner in breach of USACE's duty to ENDE. Because of this underlying negligence and resulting breach, the USACE's estimated quantities were approximately 27 percent higher than actual quantities for the affected line items and thereby caused ENDE and Greenfield to incur additional costs.

WHEREFORE, ENDE respectfully requests that this Court enter an Order on Count IV that the USACE breached the Contract, and that as a result thereof, ENDE is

entitled to recover from the USACE the total amount of $107,987, consisting of $69,047 of under-absorbed and unrecovered overheads and $38,940 on the Greenfield pass-through claim, plus CDA interest at the applicable rate.

Dated: this 26th day of September 2003.

Respectfully Submitted,

**Engineered Demolition, Inc.**

By Counsel:

John C. Person, Esquire
PERSON & CRAVER LLP
1801 K Street, N.W.
Washington, D.C. 20006
(202) 466-4434 – phone
(202) 466-4416 – fax

Attorneys for Plaintiff

Of Counsel:

Hon. Craig Kosonen
Engineered Demolition, Inc.


10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ENGINEERED DEMOLITION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 03-2231C |
| v. | ) | (Judge Lettow) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES AND REQUESTS <u>FOR THE PRODUCTION OF DOCUMENTS</u>**

Pursuant to Rules 33 and 34 of the Rules of the United States Court of Federal Claims, Plaintiff Engineered Demolition, Inc. (ENDE) hereby responds to Defendant's First Interrogatories and Request for the Production of Documents ("the Discovery Requests").

ENDE objects generally to the Discovery Requests to the extent that: (a) they seek disclosure of confidential business information or documents, information or documents protected by the attorney-client privilege or the work product doctrine, or information or documents protected by any other applicable privilege or immunity against discovery; (b) they are not reasonably calculated to lead to the discovery of admissible evidence, are vague and ambiguous, are overbroad or unduly burdensome, or seek information or documents not relevant to any claim or defense of any party; (c) the interrogatories exceed 25 in number; and (d) the Instructions and Definitions therein seek to impose obligations on ENDE beyond those provided by the Rules of the United States Court of Federal Claims. Reserving the right to modify or supplement any of its objections, answers or responses, ENDE states as follows:

**INTERROGATORIES**

**Interrogatory Number 1**

Explain all facts and circumstances relating to the contention in paragraph 15 of the complaint that "[o]n approximately October 11, 2001, the Contracting Officer's Representative (COR) decided that the final elevation for the finish grade would be based on the elevation of the haul road, an elevation that was substantially higher that ENDE's expectation and an elevation that was substantially higher than the elevation disclosed in the Contract documents."

**Answer:**

Upon further review of the relevant facts and documents, ENDE no longer takes the position regarding the finish grade set forth in paragraphs 14 and 15 of the Complaint.

ENDE now takes the position that Defendant is liable to ENDE on two separate and independent grounds:

1. Defendant's Defective Specifications. Government estimates carry with them the implied warranty that they are adequate, accurate, and complete. To the extent that a contractor is able to demonstrate that a Government estimate was negligently prepared, the contractor is entitled to recover its additional costs arising from reliance on the estimate. Here, Defendant instructed ENDE to utilize the quantities set forth in the Contract Bidding Schedule as the basis for preparing and submitting its pricing. This Bidding Schedule, contained in Section B of the Contract and attached hereto at Tab 1, represented that ENDE would be excavating 8,080 cubic yards (cy) of material in-situ and transporting 10,500 cy of material ex-situ for disposal by rail. Pricing negotiations conducted on August 16 and 17, 2001 likewise were based on this same Bidding Schedule, reflecting 8,080 cy of excavation and 10,500 cy of transportation (please see "Price Negotiation Memorandum" dated August 20, 2001 in Defendant's possession). Following Contract award, Defendant identified these same estimated quantities to ENDE in a Pre-Construction and Mutual Understanding

Meeting held on September 6, 2001. The minutes state that "[t]he Main Pile Removal and Rail Transportation are measured by cubic yards, 8,080 and 10,500 [cubic yards] are expected." A copy of the minutes (dated September 26, 2001) from this meeting, which were prepared by Defendant, is appended hereto at Tab 2.

With respect to the main pile removal and transportation quantities, Defendant's estimate was negligently prepared thus rendering its specifications defective. At least two data points confirm this conclusion. The first data point is the engineering estimate appearing on USACE Drawing No. FU-HS-4 / C-3 dated July 2001 that bears the notation: "Total Excavation = Approximately 6,600 C.Y. (see Note 1)." Note 1, in turn, reads: "The total excavation quantity was developed using computer models based on survey data for the existing grade and engineering judgement [sic] for the location of original ground line" (copy of drawing in Defendant's possession). The actual excavation quantity, as verified by "before" and "after" cross-section surveys conducted by USACE or its agent, identify the gross excavated quantity as 6,677 cy (please see Drawing No. C-1, dated November 7, 2001, a copy of which is in Defendant's possession). All Plaintiff need show to demonstrate that Defendant's specifications are defective is that the excavation estimate contained in the Bidding Schedule (8,080 cy) differs materially from the estimate depicted on the drawings (6,600 cy). And, differ it does, by more than 18%. When the actual pay quantity for excavation of 6,677 cy is introduced into the data set it becomes clear that not only are Defendant's specification defective, the 8,080 cy excavation estimate was negligently derived inasmuch as it is such an outlier when compared with the 6,600 cy estimated in Defendant's drawings and the 6,677 cy actually excavated by ENDE (the 6,600 cy and 6,677 cy numbers are within 1% of each other). Obviously, the transportation quantity, which is a function of the excavation quantity, reflects the same deficiencies.

ENDE reasonably relied on the specifications in preparing its Cost Estimate (copy enclosed) and in making its bid, and the defective specifications caused shortfalls in material quantities that precluded ENDE from recovering its home office overhead associated with the Contract and caused ENDE's subcontractor to employ an excessive number of rail cars. A copy of Greenfield Logistics, LLC's RFQ Response dated August 8, 2001 is enclosed at Tab 3, see p. 2).

2. <u>Defendant's Directive to Fill In Over-excavated Depression from Previous Contract.</u> The other factor leading to an overall reduction in the quantity of material to be excavated and transported via gondola rail cars from the site was USACE's directive to fill an over-excavated depression left from the previous contract with material from the pile that was earmarked for excavation and removal on the present Contract. By way of background, the over-excavated depression was created under the previous contract at the direction of USACE's representative, Ms. Brenda Bienkowski. It is ENDE's understanding that the purpose of this over-excavation was to allow for the ponding of water that could be used for dust control during pile excavation activities for that previous contract. The volume of material required to fill in the over-excavated depression was 762 cubic yards (cy), as denoted in Drawing No. C-1 as "fill" (copy of Drawing No. C-1, entitled "Excavation Plan and Cross Sections Thru Main Pile" and dated November 7, 2001, is in Defendant's possession).

While ENDE fully understood that the over-excavated depression created during the previous contract would have to be filled in and brought up to finish grade at some point in time, ENDE had no reasonable expectation that the required fill material would be removed from the present Contract's excavation quantities. Rather, ENDE reasonably believed that the depression would be filled with clean material or other material outside of the Contract's excavation limits. Indeed, during the price negotiations conducted over August 16 and 17,

2001, USACE consistently used the excavation figure of 8,080 cy as the quantity on which Contract pricing should be based, not an amount reduced by 762 cy or some similar amount. Likewise, USACE consistently used the figure of 10,500 cy as the ex-situ disposal quantity, not an amount reduced by 762 cy and multiplied by an ex-situ expansion factor of approximately 30% (please see "Price Negotiation Memorandum" dated August 20, 2001 in Defendant's possession). Had USACE disclosed during price negotiations that the over-excavated depression left from the previous contract would be filled in with quantities earmarked for excavation and off-hauling on the present Contract, ENDE would have adjusted its pricing accordingly.

The first time that ENDE learned of USACE's intention to direct it to fill the over-excavated depression left under the previous contract with contaminated material within the excavation limits of the present Contract was during a planning meeting held on September 10, 2001, several days following Contract award. Minutes from that meeting memorializing that point are attached hereto at Tab 4. That directive was confirmed in a meeting held between the parties on September 27, 2001 (please see USACE's "Memorandum for Record" dated September 27, 2001 concerning the meeting that same day, included herewith at Tab 5). That this directive was an authorized USACE directive is evidenced, among other sources, by the Modification P00006 file, bearing the signature of the Contracting Officer, that includes the statement: "No reduction in quantity was made due to the over excavation since it was done at the direction of USACE" (copy of Modification P00006 file is in Defendant's possession).

**Interrogatory Number 2**

Explain how the "decision" of the COR referenced in Interrogatory Number 1 was communicated to ENDE. To the extent the decision was conveyed in writing, identify all documents relating to this decision. To the extent the decision was conveyed orally, identify the person or persons who conveyed this decision on behalf of the Government and all

persons who were present when the decision was communicated to ENDE.

**Answer:**

See Answer to Interrogatory No. 1.

**Interrogatory Number 3**

Explain how you have calculated each element of the damages claimed in the complaint ($69,047 in "under-absorbed and unrecovered overheads" and $38,940 on the "Greenfield pass-through claim"), and identify all documents relating to this calculation.

**Answer:**

ENDE claims a total amount of $107,987.00, plus Contract Disputes Act interest at the applicable rate. This amount is calculated as follows: The shortfall in excavation was 1,407.27 cy. At $49 per yard, the unrealized compensation associated with that shortfall is $68,956.23. ENDE's unrecouped overhead on exaction computes to 33% of that unrealized amount, or $22,755.55. The shortfall on transportation is 3,161.08 yards. At $125.50 per yard, the unrealized compensation associated with that shortfall is $396,715.54. ENDE's unrecouped overhead on that work element amounts to 10% of that amount, or $39,671.55. The Greenfield pass-through claim concerning the rented but unutilized railroad cars is $38,940.00. ENDE's markup on the Greenfield pass-through claim is $6,619.80. The total damages for which ENDE is entitled to recover from the Government is $107,987 ($22,755.55 + $39,671.55 + $38,940.00 + $6,619.80).

The Greenfield pass-through claim in the amount of $38,940 represents those costs incurred by Greenfield associated with the lease and delivery of 33 gondola rail cars that remained unused due to the quantity shortfall. The percentage adders for ENDE's overhead and markup are as per the amounts agreed to between ENDE and USACE during the August 16 and 17, 2001 price negotiations. In that regard, the Price Negotiation Memorandum dated August 20, 2001 states at page 2 as follows: "The proposed overhead

rate of 33% was accepted with the following exceptions – 15% overhead for materials (all items) – 10% overhead for subcontracted services under Item 0019 only [Disposal, Rail Transportation] – no overhead or profit on travel / per diem (all items)" (copy of Price Negotiation Memorandum in Defendant's possession).

## DOCUMENT REQUESTS

**Request for Production Number 1**

Please produce all documents identified in plaintiff's initial disclosures or in response to the preceding interrogatories.

**Response:**

ENDE will produce responsive, non-privileged, non-work product documents. See tabs 1-5.

**Request for Production Number 2**

Please produce all documents, including surveys, reports, and analyses, relating to the final elevation of the finish grade, as specified in paragraph 14 of the complaint.

**Response:**

See Answer to Interrogatory No. 1.

**Request for Production Number 3**

Please produce all documents relating to communications between ENDE and the Corps of Engineers relating to the final elevation of the finish grade.

**Response:**

See Answer to Interrogatory No. 1.

**Request for Production Number 4**

Please produce all documents relating to forecasts or estimations performed either by ENDE or by the Corps of Engineers of the amount of soil to be removed from the Hazelwood Interim Storage Site pursuant to the contract at issue in this action.

**Response:**

ENDE will produce responsive, non-privileged, non-work product documents. See Tabs 6-22:

Tab 6: ENDE Cost Estimate dated Aug. 16, 2001

Tab 7: Notice to Proceed dated Sept. 6, 2001

Tab 8: Removal, Grading and Restoration Plan dated Sept. 9, 2001

Tab 9: Preparatory Inspection Notes dated Sept. 10/11, 2001

Tab 10: Notes from Sept. 10, 2001 meeting

Tab 11: Agenda dated Sept. 18, 2001

Tab 12: Removal, Grading and Restoration Plan dated Sept. 24, 2001

Tab 13: Agenda dated Sept. 25, 2001

Tab 14: Agenda dated Oct. 2, 2001

Tab 15: Agenda dated Oct. 11, 2001

Tab 16: Letter dated Oct. 15, 2001 from D. Mueller to ENDE

Tab 17: Agenda dated Oct. 15, 2001

Tab 18: Agenda dated Oct. 23, 2001

Tab 19: Agenda dated Oct. 30, 2001

Tab 20: ENDE meeting notes dated Dec. 7, 2001

Tab 21: Modification dated July 9, 2002

Tab 22: Letter dated Sept. 25, 2002 from C. Kosonen to USACE

**Request for Production Number 5**

Please produce all documents relating to ENDE's determination to perform or not to perform an estimate of the amount of soil to be removed from the Hazelwood Interim Storage Site pursuant to the contract at issue in this action.

**Response:**

There exist no responsive documents in ENDE's custody or control. ENDE was entitled to rely upon Defendant's quantity estimates and did, in fact, rely on those estimates to its detriment.

**Request for Production Number 6**

Please produce all documents relating to any understanding or belief by ENDE that the contract at issue in this action contained a "Changes" clause.

**Response:**

Please see USACE letter dated October 15, 2001 attached hereto at Tab 23 that referenced "Section I, Contract Clause 52.243-1, 'Changes – Fixed Price." See also pp. 49 and 50 of 70 of Section I of Contract, also included herewith at Tab 23, that sets out the "Changes" clause.

**Request for Production Number 7**

Please produce all documents relating to plaintiff's calculation of the amount of damages sought in this action.

**Response:**

Please see Plaintiff's Responses to Defendant's Request for Production Nos. 1-6.

AS TO THE OBJECTIONS TO THE DISCOVERY REQUESTS:

Dated: January 25, 2005

John C. Person
Person & Craver LLP
1801 K Street, NW
Washington, DC 20006
(202) 466-4434
(202) 466-4416 (facsimile)

Counsel for Plaintiff Engineered Demolition, Inc.

**VERIFICATION**

1. I am the President of Engineered Demolition, Inc. (ENDE), the Plaintiff in this case, and have authority to execute this Verification for ENDE. My business address is 3901 Schreiber Way, Coeur d'Alene, ID 83814

2. Some of the answers to the foregoing interrogatories are based on ENDE's records and from information supplied by its employees and agents, and I may have no personal knowledge of the facts alleged in some of such answers. With this disclaimer, I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing answers are true and correct.

Executed on January 19, 2005

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 25th day of January 2005, I caused two true and correct copies of the foregoing "Plaintiff's Responses to Defendant's First Set of Interrogatories and Requests for Production of Documents" (one with attachments and one without) to be hand-delivered to:

Andrew P. Averbach
Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, D.C. 20530

Attention: Classification Unit
8th Floor 1100 L Street, N.W.

John C. Person