No. 03-2231C
(Judge Lettow)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

ENGINEERED DEMOLITION, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR SUMMARY JUDGMENT**

---

JOHN C. PERSON
Person & Craver LLP
1801 K Street, NW
Washington, DC 2006
(202) 466-4434
(202) 466-4416 (facsimile)

Counsel for Plaintiff Engineered Demolition, Inc.

November 21, 2005

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………….3

PRELIMINARY STATEMENT……………………………………………………5

STATEMENT OF FACTS………………………………………………………….6

ARGUMENT………………………………………………………………………..7

A. Applicable Legal Standards……………………………………………7

B. Neither Summary Judgment Nor Dismissal for Lack of Subject Matter Jurisdiction is Warranted for Any Part of Plaintiff's Complaint Except for Count I…………………………………..……………………………...7

1. Plaintiff Accepts that Count I No Longer States a Cause of Action…………………………………………………………......7

2. Plaintiff Has Not So Changed the Legal Theories Underpinning Counts II and III as to Deprive the Court of Jurisdiction…………7

3. Defendant is Not Entitled to Summary Judgment or Dismissal on Count IV, that the Government Negligently Prepared Its Estimate…………………………………………………………..15

CONCLUSION……………………………………………………………………..17

## TABLE OF AUTHORITIES

**CASES**

Cerberonics, Inc. v. United States,
13 C1. Ct. 415, 417 (1987)……………………………..…………………………………7

Contract Cleaning Maintenance, Inc v. United States,
811 Fed.2d 586, 592 (Fed. Cir. 1987)……………………………………………7

Datalect Computer Services, Ltd. v. United States,
(1997)…………………………………………………………………………….13

Dawco Construction Co. v. United States,
18 C1. Ct. 682 (1989)……………………………………………………………12

Hoel-Seffen Construction Co. v. United States,
456 F.2d 760 (Ct. C1.1972)……………………………...………………10

Kaiser Industries Corp. v. United States,
169 Ct. C1. 310, 340 (1965)………..……………………………………………12

Kiewit Construction Co. v. United States,
56 Fed. C1.414, 420 (2003)…………………… ………………………………7

Ling-Temco-Vought, Inc. v. United States,
475 F.2d 630 (Ct. C1.1973)…...…………………………………………………10

M.A. Mortenson Co. v. United States,
40 Fed. C1. 389, 419 (1998)……….. ……………………………………………6

Medart, Inc. v. Austin
967 F.2d 579, 581 (Fed. Cir. 1992)……………………………………………13

North Slope Technical Ltd. v. United States,
14 C1. Ct. 242 (1988)……………………………………………………………12

Womack v. United States,
389 F.2d. 793, 802 C1. Ct. (1968)………………………………………………13

**STATUTES**

41 U.S.C. § 609(a)(1)……………………………………………………………..5
41 U.S.C. § 607……………………………………………………………………...7
41 U.S.C. § 608……………………………………………………………………...7

**RULES**

RCFC 12(b)(1) ………………………………………………………………………....3
RCFC 56(c)……………………………………………………………………………..3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ENGINEERED DEMOLITION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 03-2231C |
| | ) | (Judge Lettow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR SUMMARY JUDGMENT**

## I. PRELIMINARY STATEMENT

Notwithstanding all the arguments raised in Defendant's Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction and for Summary Judgment (Dispositive Motion), the gravamen of Plaintiff's dispute has remained consistent throughout the administrative claims submission process, the filing of Plaintiff's Complaint at this Court, and the service of Plaintiff's Interrogatory Responses. Those core contentions are that: (1) Plaintiff was directed by Defendant to base its bid on excavating and off-loading 8,080 cubic yards (cy) of contaminated material; (2) in actuality, Plaintiff excavated 6,678 cy of contaminated material, some 1,402 cy less than represented by Defendant, and transported 7,339 cy of contaminated material, some 3,161 cy less than represented by Defendant; and (3) Plaintiff suffered damages in the amount of $107,987, consisting of: (a) Plaintiff's un-recouped overhead on the quantity under-run of $22,755; (b) Plaintiff's un-recouped overhead on the transportation shortfall of $39,672; (c) Plaintiff's subcontractor's pass-through claim for 33 unused gondola rail

cars due to the quantity shortfall in the amount of $38,940; and (d) Plaintiff's markup on the subcontractor's pass-through claim in the amount of $6,620.

Given the constancy of these contentions throughout the disputes process, the Contracting Officer had adequate notice of Plaintiff's claim sufficient to enable her to undertake a meaningful review of Plaintiff's claim submission. Similarly, Defendant was charged with sufficient notice of Plaintiff's core contentions upon the filing of Plaintiff's Complaint in this proceeding on September 26, 2003. Finally, Defendant continued to possess sufficient notice of Plaintiff's core contentions as contained in Plaintiff's Responses to Defendant's First Set of Interrogatories and Requests for Production of Documents, dated January 25, 2005. The only difference in Plaintiff's position at any of these three junctures is that Plaintiff's legal theories underpinning entitlement have evolved slightly as additional facts have been learned in the discovery process. Such an evolution and refinement of Plaintiff's contentions is entirely normal.

For the reasons to be presented below, Plaintiff respectfully requests that the Court deny Defendant's Dispositive Motion in its entirety.

## II. STATEMENT OR FACTS

On pp. 3-8 of its Dispositive Motion, Defendant sets forth its version of the facts that relate to the legal arguments that it raises elsewhere in the motion. Plaintiff disagrees with a number of characterizations made by Defendant in that factual recitation, but chooses to contest those facts as they are addressed in the context of the legal discussion below.

## III. ARGUMENT

### A. Applicable Legal Standards

On pp. 8-9 Defendant sets forth the applicable legal standard for dismissal pursuant to RCFC 12(b)(1), and on pp. 9-10, Defendant sets forth the legal standard for granting summary judgment pursuant to RCFC 56(c). While Plaintiff has no quarrel with Defendant's articulation of those standards, Plaintiff asserts, for reasons set out below, that neither of those standards has been met here.

### B. Neither Summary Judgment Nor Dismissal for Lack of Subject Matter Jurisdiction is Warranted for Any Part of Plaintiff's Complaint Except for Count I

#### 1. Plaintiff Accepts that Count I No Longer States a Cause of Action

On p. 10 of its Dispositive Motion, Defendant contends that in light of the fact that the Contract does include the standard "Changes" clause, Plaintiff's allegations in Count I predicated on the absence of such a clause must fail. Plaintiff accepts that Count I no longer states a valid cause of action as the Contract, indeed, does include a "Changes" clause, which entitles the Contracting Officer to make changes within the general scope of the Contract. Plaintiff would add that the Count I allegations were based on representations of Contracting Officer's counsel to Plaintiff during the claim submission process that the Contract did not contain such a clause.

#### 2. Plaintiff Has Not So Changed the Legal Theories Underpinning Counts II and III as to Deprive the Court of Jurisdiction

On pp. 11 through 15, Defendant argues that it is entitled to summary judgment under Counts II and III for two reasons: (1) that Plaintiff allegedly has "disavowed" its underlying contentions since filing the Complaint; and (2) that Plaintiff allegedly never presented to the Contracting Officer its contention that the USACE directed Plaintiff to

deposit approximately 773 cy in a depression in the grade created during the performance of one of Plaintiff's earlier contracts at the site. Defendant's contentions are addressed seriatim.

Plaintiff's Count II pleads that to the extent the Contract did not include a "Changes" clause, such a clause was implied by conduct of the USACE. Plaintiff's Count III pleads that the missing "Changes" clause was imported as a matter of law. In both counts, Plaintiff contends that the United States Army Corps of Engineers' (USACE) directive changing the final grade elevation and its directive that Plaintiff deposit material into a depression created during an earlier and similar contract at the site constituted constructive changes entitling Plaintiff to additional compensation. Since it is now clear that the Contract does contain a "Changes" clause, the allegations contained in Counts II and III effectively have become merged into a single count seeking recovery under the "Changes" clause for Plaintiff's increased costs. Having laid that groundwork, the analysis boils down to: (1) whether the constructive change argument was presented as part of Plaintiff's certified claim for the Contracting Officer's final decision; and (2) whether Plaintiff's present formulation of its contentions, as expressed in its Interrogatory Answers, are fairly implicated in Plaintiff's certified claim submission.

(a) Whether the Constructive Change Argument was Presented in Plaintiff's Certified Claim

Throughout its July 17, 2002 certified claim, Plaintiff alleges that it is entitled to an equitable adjustment for the quantity shortfall under a number of legal theories, including the constructive change doctrine. See Defendant's Appendix in support of its Dispositive Motion (Def. App. __), p. 57. Of importance, Plaintiff also argued in its certified claim submission that the Variation in Estimated Quantities (VEQ) clause

should have been imported into the Contract as a matter law under the Christian doctrine[1] to enable recovery solely by virtue of the quantity shortfall. See Def. App. 52-59. These issues, including a detailed description of the magnitudes of the excavation and transportation shortfalls, were fully articulated and presented to the Contracting Officer for her final decision thereon.

(b) Whether Plaintiff's Present Formulations of its Contentions, as Expressed in its Interrogatory Answers, are Fairly Implicated in Plaintiff's Certified Claim

In its Answer to Defendant's Interrogatory No. 1, Plaintiff reformulated its contentions concerning Defendant's responsibility for the additional costs incurred by Plaintiff due to the excavation and transportation quantity shortfalls. In that answer, which is set out at Def. App. 12-15, Plaintiff makes two contentions: (1) that Defendant's specifications are defective; and (2) that Defendant directed Plaintiff to fill in an over-excavated depression created during a previous contract. There, Plaintiff stated that it relied on the quantities corresponding with Contract Line Item Numbers (CLIN) in the Bidding Schedule, Section B of the Contract, for excavation and transportation. Those quantities were 8,080 cy and 10,500 cy, respectively. A note on one of the Defendant's drawings, however, read: "Total Excavation = Approximately 6,600 C.Y. (see Note 1)." The actual excavation quantity, as verified by the "before" and "after" cross-section surveys conducted by the Defendant or at its direction, identified the gross excavated quantity as 6,677 cy, a quantity within one percent of the drawing note number, thereby corroborating that the drawing note quantity of 6,600 cy and not the Bidding Schedule number of 8,080 cy was the quantity that was really intended. In hindsight, then, it is

[1] The Christian doctrine was announced in the case G.L. Christian & Assoc. v. United States, 312 F.2d 418, cert. denied, 375 U.S. 954 (1963).

clear that the USACE made a mistake in transposing the quantity shown on the drawing note to the Bidding Schedule, rendering the specifications defective.[2]

The central issue before the Court in Defendant's Dispositive Motion is whether Plaintiff's present contention that the difference in quantities resulted from Defendant's defective specification was fairly implicated in Plaintiff's certified claim submission. A contractor claiming an equitable adjustment under the breach of implied warranty of specification / defective specification doctrine must prove: (1) reasonable reliance on and compliance with the specifications at issue; (2) that the specifications were defective; and (3) that the defective specifications caused the claimed increased costs. M.A. Mortenson Co. v. United States, 40 Fed. Cl. 389, 419 (1998). Here, Plaintiff relied on the Bid Schedule quantities for excavation and transportation as the correct expression of the work scope to be priced. Defendant, in fact, directed that Plaintiff assume that the Bid Schedule quantities were correct for negotiation and pricing purposes. The specifications were defective because the actual quantity survey upon completion of the project verified that the quantity depicted on the drawings was the correct expression of the volume to be excavated in-situ and then transported ex-situ, not the Bid Schedule CLIN quantities. With respect to the third element, the incurrence of increased costs, if the excavation CLIN had been 6,600 cy rather than 8,080 cy, Plaintiff would have allocated its fixed costs over that smaller base, thereby resulting in a higher unit price for that CLIN, and Plaintiff's subcontractor would have ordered fewer gondola rail cars.

[2] As the Court no doubt is aware, the defective specifications doctrine derives from the case United States v. Spearin, 248 U.S. 132 (1918) in which the High Court held that the government breaches its implied warranty of specification where the contractor cannot achieve the intended result with the government-provided design documents.

This Court on a number of occasions has entertained challenges to its subject matter jurisdiction in contexts not dissimilar from the instant challenge by Defendant. The test developed by the Court as to whether claims presented to the Court have been fully presented administratively is that the claims rely upon the same set of operative facts. As noted in one recent decision, "[o]perative facts are the essential facts that give rise to a cause of action." Kiewit Construction Co. v. United States, 56 Fed.Cl. 414, 420 (2003), citing, Cerberonics, Inc. v. United States, 13 Cl.Ct. 415, 417 (1987). The Court's discussion on this point in Cerberonics is instructive:

> Agency boards of contract appeals, to whom negative decisions of contracting officers can be appealed under 41 U.S.C. § 607 and 608, have looked variously to the 'ultimate character' or 'essential nature' of the original claim, or whether the operative or legal facts have been changed on appeal. The critical test appears to be whether the scheme of adjudication prescribed by the CDA is undermined by the contractor's claim on appeal – that is, by circumventing the statutory role of the contracting officer to receive and pass judgment on the contractor's entire claim.

(footnoted citations omitted). The Federal Circuit Court of Appeals expresses its test for subject matter jurisdiction as whether the certified claim provided "adequate notice of the basis and amount of the claim." Contract Cleaning Maintenance, Inc. v. United States, 811 Fed.2d 586, 592 (Fed. Cir. 1987). Here, the quantity shortfalls and the ad damnum amounts sought are identical whether one considered Plaintiff's certified claim submission, Plaintiff's Complaint, or Plaintiff's Interrogatory responses. The only issue is whether an allegation of defective specification was fairly considered in the Contracting Officer's Final Decision.

In both Plaintiff's certified claim submission and in the USACE Contracting Officer's Final Decision, the issue of whether the Contract could be interpreted to enable

payment on the additional costs occasioned by the quantity shortfalls lay at the core of the parties' exchanges. See Plaintiff's certified claim of July 17, 2002 (Def. App. 52-59); Plaintiff' supplemental submission of September 18, 2002 (Def. App. 60); Plaintiff's supplemental submission of September 25, 2002 (Def. App. 61-62); the USACE Contracting Officer's Final Decision dated September 25, 2002 (Def. App. 63-67); and the USACE Contracting Officer's supplementation to her Final Decision dated October 8, 2002 (Def. App. 68-69). As a basis for recovery, the defective specification argument is imbued in all the claims-related correspondence cited above. Plaintiff specifically requested that the Contracting Officer consider breach of contract as an alternative basis for recovery in its letter of September 25, 2002, as follows:

> Finally, as to the law, we would urge you to consider our request under the additional theory of contract breach. The USACE bargained with claimant, succeeding in obtaining an agreement to transport a represented quantity of contaminated soil at a unit price that was figured to cover claimant's home office overhead spread out over the expected duration of load-out proportionate to that quantity. Had the true quantity been represented claimant would not have bargained for the pricing that resulted, and we would not have found ourselves a couple of days from completion with much unabsorbed home office overhead.

(Def. App. 61). Since breach of implied warranty of specification (defective specifications) is subsumed within contract breach generally, the doctrine was presented for consideration and decision at the administrative level. That legal basis of recovery was considered and rejected by the Contracting Officer in her letter of October 8, 2002, in which she concluded that there "was no breach of contract." See Def. App. 68. Since the operative facts have not changed from the administrative claims submission process,

and since Defendant at all times was provided "adequate notice of the basis and amount of the claim," the Court possesses subject matter jurisdiction over Plaintiff's claims.[3]

The other broadside launched by Defendant on pp. 11-15 of its Dispositive Motion is that because Plaintiff allegedly did not specifically refer in its certified claim submission to an allegation contained in both its Complaint and in its Interrogatory Answers that 773 cy of the quantity shortfall was the result of a USACE directive to deposit that material in a depression created during performance of a previous contract, the Court does not possess subject matter jurisdiction to entertain argumentation based on that directive here. Plaintiff disagrees. First, the applicable law does not require the high level of pleading granularity as Defendant would suggest. Defendant cites no case where a court has held the allegation of facts similar in detail to the USACE directive at issue here to be necessary to a court's assertion of subject matter jurisdiction. Again, as pointed out above, the Federal Circuit test as to whether a claim has been sufficiently articulated at the administrative level is whether it provided "adequate notice of the basis and amount of the claim." See Contract Cleaning Maintenance, supra. At every juncture, Plaintiff apprised Defendant of its legal and contractual bases of recovery along with damages based on quantity shortfalls. Plaintiff's detailed administrative claim submissions more than satisfy the threshold notice requirements.

Moreover, Defendant is well aware of this component of the quantity shortfall: In both its meetings on September 10, 2001 and on September 27, 2001, Defendant directed Plaintiff to fill the depression created under a previous contract with material to be

---

[3] With respect to the policy concern raised in Cerberonics that a contractor may attempt to circumvent the statutory role of the contracting officer, there can be absolutely no doubt, given the large administrative record of exchanges between the parties along with the multiple theories advanced by Plaintiff in those exchanges in support of its entitlement, that the contracting officer would have denied Plaintiff's claim had it been fashioned solely as a defective specifications claim.

removed from the instant Contract. Minutes reflecting this directive are attached hereto as Plaintiff's Appendix in Opposition to Defendant's Dispositive Motion (Pl. App. __) at pp. 1-6.

On p. 13 of its Dispositive Motion, Defendant suggests that any claim based on a quantity shortfall occasioned by the USACE's directive to fill a depression left during performance of a previous contract is barred by lack of notice. Defendant misses the point. It is not so much the USACE's directive to use pile material to fill a previously created depression, it is the quantity shortfall at the end of the project that is the problem. If Plaintiff had excavated and transported quantities that were close in actuality to those indicated in the Bid Schedule, Plaintiff would have had no damages, and the fact that the USACE directed Plaintiff to fill a previously created depression with pile material would be of little interest. With respect to the 30-day notice requirement included in the standard "Changes" clause, courts and boards have long held that timely, written, formal notice is not required where the government possesses actual knowledge of the event for which notice was required or where the government is not prejudiced by lack of timely, written, formal notice. See, e.g., Hoel-Seffen Construction Co. v. United States, 456 F.2d 760 (Ct. Cl. 1972); Ling-Temco-Vought, Inc. v. United States, 475 F.2d 630 (Ct. Cl. 1973); Pittsburgh-Des Moines Corp., EBCA 314-3-84, 89-2 BCA (CCH) ¶ 21739.

Particularly troubling is Defendant's assertion on p. 14 of its Dispositive Motion that Plaintiff volunteered to fill the previously created depression with material from the pile that was the subject of the instant Contract. The colloquy between Defendant's lawyer and Plaintiff's Vice President of Operations on this point went as follows:

> Q: Did there come a time when – Well, let me ask that question differently. How did it come to be that Engineered

> Demolition filled the overexcavated portion on HISS II with materials excavated pursuant to HISS IV?
>
> A: Near the completion of HISS IV, we were trying to gain an understanding, because there was a complete absence of information in the documents, an understanding of the specific grade that they wanted us to take the entire site to. We were at the completion of the main pile; we were trying to gain an understanding of where they wanted us to take the entire site to so that we would have the drainage that they wanted. It was at that time that the government said – gave us a fairly good idea where they wanted it to go and asserted the fact that they wanted the contaminated materials at the closing – at the completion of work of Phase 4 to be – to be placed into the overexcavated area.
>
> Q: On HISS II.
>
> A: The area that was overexcavated on HISS II.

(Pl. App. 8); (emphasis added).

Instead of dealing with this bald contradiction to Defendant's theory of the case, as it should have, Defendant offers up a stealth Declaration of the Contracting Officer's Representative, Mr. Mueller, that Plaintiff volunteered to do this work, without so much as trying to reconcile the sworn testimony of Mr. Welch quoted above. Obviously, there exist genuine issues of material fact as to this point.

3. Defendant is Not Entitled to Summary Judgment or Dismissal on Count IV, that the Government Negligently Prepared Its Estimate

On pp. 15-19 of its Dispositive Motion, Defendant trots out the same tired arguments that it raises in seeking to obtain partial summary judgment on Counts II and III, viz., that the negligent estimate argument was not expressly raised by Plaintiff during the administrative claims submission process and that the Complaint, as filed, does not precisely mirror Plaintiff's more recently served Interrogatory Answers. Again, the gravamen of Plaintiff's administrative claim, its Complaint, and its Interrogatory

Answers is that through no fault of its own, the pile of contaminated material for the instant Contract was considerably smaller than expected, and as a result, Plaintiff incurred additional costs for which it is entitled to recover. Plaintiff's allegation that this quantity shortfall was caused by Defendant's negligent estimate fits well within the legal and contractual bases of recovery raised by Plaintiff at the administrative level, and thus the certified claim submission provides "adequate notice of the basis and amount" of the negligent estimate claim pled in the instant action.

Defendant next contends that pursuant to the "Site Visit" clause (FAR § 52.237-1; April 1984), Plaintiff could have surveyed but chose not to survey the pile prior to bidding the work. The "Site Visit" clause merely charges the bidder knowledge that a reasonable, experienced, and intelligent contractor would have discovered had it conducted a site visit. See Kaiser Industries Corp. v. United States, 169 Ct. Cl. 310, 340 (1965). The clause does not hold a bidder to knowledge that could be gleaned, for example, by a trained geologist or geotechnical engineer. Id. A bidder is not required to consult data or inspect documents that are not part of the contract, and thus is not charged with information contained in such data or documents. See, e.g., North Slope Technical Ltd. v. United States, 14 Cl. Ct. 242 (1988). Moreover, contrary to Defendant's assertions here, a bidder is not required to make extensive engineering efforts prior to bidding to verify the site conditions indicated in the contract. See, e.g., Dawco Construction Co. v. United States, 18 Cl. Ct. 682 (1989), aff'd in part and rev'd in part, 930 F.2d 872 (Fed. Cir. 1991). For all of these reasons, Defendant's contentions as to this issue fail.

Finally, Defendant argues that the government does not warrant its estimates with "crystal ball" accuracy and that the discrepancy here is insufficient to give rise to government liability. The point that Defendant misses here is that the focus is not so much on the absolute disparity between estimated quantities and actual quantities, but on whether Defendant prepared its estimate in a reasonable manner. With respect to the interpretation of this "reasonableness" standard, the applicable authorities hold that an offeror is "entitled to rely on the government estimate set forth in the contract as representing an honest and informed conclusion." Datalect Computer Services, Ltd. v. United States, 1997 U.S. Claims LEXIS 291 at 22 (December 18, 1997) citing Womack v. United States, 389 F.2d 793, 802 (Cl. Ct. 1968) (emphasis added). In formulating its estimate, "the government must act in good faith and use reasonable care in computing its estimated needs; it is not free to carelessly guess at its needs." Datalect, 1997 U.S. Claims LEXIS 291, citing Medart, Inc. v. Austin, 967 F.2d 579, 581 (Fed. Cir. 1992). Further, the government is bound by a good faith standard that requires it to seek the most current information available, or notify offerors of situations or factors likely to affect the estimate." Datalect, 1997 U.S. Claims LEXIS 291. Here, Defendant should have harmonized, but did not harmonize, the differing quantities set out in the Bid Schedule and on the drawings. Here, also, Defendant should have taken, but did not take, into consideration the estimated reduction in pile quantity for filling the depression left by a previous contract. For these reasons, Defendant's estimate is defective.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiff respectively requests that the Court deny Defendant's Dispositive Motion.

Respectfully submitted,

Dated: November 21, 2005

s/ John C. Person
John C. Person, Esquire
PERSON & CRAVER LLP
1801 K Street, NW
Washington, DC 20006
(202) 466-4434 - phone
(202) 466-4416 - fax

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of November, 2005, I served Andrew P. Averbach, Esq., Defendant's counsel, with the following document by filing it electronically in accordance with the Court's CM/ECF rules and guidelines: PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR SUMMARY JUDGMENT.

s/ John C. Person