IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ENGINEERED DEMOLITION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 03-2231C |
| | ) | (Judge Lettow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED**
**FINDINGS OF UNCONTROVERTED FACTS**

Pursuant to Rule 56(h)(2) of the Rules of the United States Court of Federal Claims, Plaintiff, Engineered Demolition, Inc. (ENDE) respectfully submits its responses to Defendant's Proposed Findings of Uncontroverted Facts:

1. On July 24, 2001, the U.S. Army Corps of Engineers ("USACE" or the "Corps") issued solicitation no. DACW43-01-R-0702 for the removal, transportation, and disposal of radiologically contaminated soil in the "main pile" at the Hazelwood Interim Storage Site ("HISS") in St. Louis County, Missouri. Def. App. 22, 27.

**Plaintiff's response:** Agreed.

2. The solicitation sought a contractor to perform the last of four contracts for the removal of material from the HISS. Def. App. 74.

**Plaintiff's response:** Agreed.

3. Plaintiff Engineered Demolition, Inc. ("ENDE") had been the contractor on each of the first three contracts. Def. App. 74.

**Plaintiff's response:** Agreed.

4. Section B of the solicitation, the bidding schedule, indicated that the quantity of material to be removed from the main pile (item 8) was estimated to be 8,080 cubic yards and requested a unit price and a dollar amount for this line item. Def. App. 23. The bidding schedule also sought a unit price and a dollar amount for the disposal of an estimated 10,500 cubic yards of material. Def. App. 23.

**Plaintiff's response:** Agreed.

5. The notes to the bidding schedule advised that "[a]ll quantities shown on the SUPPLIES OR SERVICES AND PRICE/COSTS are estimated quantities except when the unit is shown as Lump Sum." Def. App. 24.

**Plaintiff's response:** Does not disagree, but objects as irrelevant.

6. The solicitation also included FAR § 52.237-1, "Site Visit" (April 1984), and stated:

> Offerors or quoters are urged and expected to inspect the site where services are to be performed and to satisfy themselves regarding all general and local conditions that may affect the cost of contract performance, to the extent theat [sic] the information is reasonably obtainable. In no event shall failure to inspect the site constitute grounds for a claim after contract award.

Def. App. 28.

**Plaintiff's response:** Does not disagree, but objects as irrelevant. Defendant seeks to impose a higher standard on Plaintiff than the cases interpreting the "Site Visit" clause impose, as Plaintiff describes more fully in its Opposition Brief.

7 . ENDE understood that it had the right to conduct a survey of the site prior to bidding and was never instructed not to perform a survey. Def. App. 73 (Tr. 65:16-24).

**Plaintiff's response:** Does not disagree, but objects as irrelevant. Defendant seeks to impose a higher standard on Plaintiff than the cases interpreting the "Site Visit" clause impose, as Plaintiff describes more fully in its Opposition Brief.

8. ENDE elected not to perform an estimate of the size of the main pile prior to award. Def. App. 18-19 (plaintiff's response to request for production of documents no. 5).

**Plaintiff's response:** Does not disagree, but objects as irrelevant.

9. ENDE was awarded contract no. DACW43-01-C-0426 on August 31, 2001. Def. App. 29.

**Plaintiff's response:** Agreed.

10. The total contract price was $2,301,894.67, including five items to be paid upon a lump sum basis (totaling $588,224.67), an estimated $395,920.00 for removal of the material in the main pile (based upon 8,080 cubic yards at $49 per cubic yard), and an estimated $1,317,750.00 (based upon 10,500 cubic yards at $125.50 per cubic yard) for disposal of the material by rail transportation. Def. App. 31.

**Plaintiff's response:** Agreed.

11 . With respect to the removal and disposal of soil (which were designated as unit

price, as opposed to lump sum, payment items), the contract specified that payment would be made upon the basis of the number of cubic yards removed or disposed. Def. App. 35-36.

**Plaintiff's response:** Agreed.

12. The contract incorporated FAR § 52.243- 1 ("Changes - Fixed Price (Aug. 1987) - Alternate II (Apr. 1984")), and provided:

> (a) The Contracting Officer may at any time, by written order, and without notice to the sureties, if any, make changes within the general scope of this contract in any one or more of the following:
>
> (1) Description of services to be performed.
> (2) Time of performance (i.e., hours of the day, days of the week, etc.).
> (3) Place of performance of the services.
> (4) Drawings, designs, or specifications when the supplies to be furnished are to be specially manufactured for the Government in accordance with the drawings, designs, or specifications.
> (5) Method of shipment or packing of supplies.
> (6) Place of delivery.
> (b) If any such change causes an increase or decrease in the cost of, or the time required for, performance of any part of the work under this contract, whether or not changed by the order, the Contracting Officer shall make an equitable adjustment in the contract price, the delivery schedule, or both, and shall modify the contract.
>
> (c) The Contractor must assert its right to an adjustment under this clause within 30 days from the date of receipt of the written order. However, if the Contracting Officer decides that the facts justify it, the Contracting Officer may receive and act upon a proposal submitted before final payment of the contract.
>
> (d) If the Contractor's proposal includes the cost of property made obsolete or excess by the change, the Contracting Officer shall have the right to prescribe the manner of the disposition of the property.
>
> (e) Failure to agree to any adjustment shall be a dispute under the Disputes clause. However, nothing in this clause shall excuse the Contractor from proceeding with the contract as changed.

Def. App. 38-40.

**Plaintiff's response:** Agreed.

13. Work began under the contract on or about September 6, 2001. Def. App. 44.

**Plaintiff's response:** Disagreed. The Notice to Proceed, following which work could begin, was issued on September 6, 2001.

14. On October 1, 2001, the contracting officer's representative, David E. Mueller, sent ENDE a "Memorandum for Record" reflecting a coordination meeting held on September 27, 2001. ENDE was requested to review the memorandum and provide any comments. Def. App. 45.

**Plaintiff's response:** Agreed.

15. Among other things, the memorandum reflects USACE's instruction that "the low area cause[d] by over excavation on the previous contract w[ill] be filled using material from the pile." Def. App. 46.

**Plaintiff's response:** Agreed.

16. ENDE understood this instruction to be "official word from the government" that a hole created during a previous phase of the project should be filled with material taken from the main pile. Def. App. 71-72 (Tr. 31:20-32:20).

**Plaintiff's response:** Agreed. Plaintiff would also note that this directive constituted a constructive change under the contract and was not work volunteered by Plaintiff.

17. This arrangement was originally suggested by ENDE's project manager, Mr. Welch, and was approved by David Mueller, the contracting officer's representative. Def. App. 75-76.

**Plaintiff's response:** Disagreed. This Proposed Finding of Fact is flatly contradicted by the deposition testimony of William Welch. Pl. App. 8.

18. ENDE completed the project as instructed and received compensation (beyond the lump sum items) for removing 6,677 cubic yards from the main pile (at a price of $49.00 per cubic yard, for a total of $327,173.00) and for disposing of 7,338.72 cubic yards by rail transportation (at a price of$125.50 per cubic yard, for a total of $921,009.36). Def. App. 43, 76.

**Plaintiff's response:** Agreed.

19. Of the 6,677 cubic yards excavated, 762 were used to fill a previously excavated hole. Def. App. 75-76. ENDE received compensation for excavating these 762 cubic yards but did not receive compensation for transporting this material by rail because it was not transported. Def. App. 72 (Tr. 37:4-15), 76.

**Plaintiff's response:** Agreed.

20. ENDE acknowledged receipt of a contract modification reflecting the excavation of 6,677 cubic yards and disposal of 7,338.72 cubic yards but "reserve[d] all rights to seek equitable adjustment" pertaining to this modification. Def. App. 41, 43.

**Plaintiff's response:** Agreed.

21. By letter dated February 10, 2002, ENDE informed Mr. Mueller that the quantity of material removed and transported had "fallen substantially short of the estimated quantity provided by USACE" and sought an equitable adjustment of $161,729.16. Def. App. 49-50.

**Plaintiff's response:** Agreed.

22. The USACE denied ENDE's February 10, 2002 request on April 18, 2002. Def. App. 51.

**Plaintiff's response:** Plaintiff agrees that Defendant denied the claim.

23. By letter dated July 17, 2002, ENDE supplemented its prior request for an equitable adjustment, asserting that the contract should be reformed to include a "VEQ" [Variation in Estimated Quantities] or that an equitable adjustment was warranted pursuant to other clauses of the contract. Def. App. 52.

**Plaintiff's response:** Plaintiff does not disagree, but notes that Plaintiff's letter of July 17, 2002 says many things beyond the limited characterization offered by Defendant.

24. On September 25, 2002, ENDE's counsel, Craig Kosonen, further supplemented ENDE's request, asserting, among other things, that USACE had breached the contract. Mr. Kosonen explained to the contracting officer that the relevant issue was not the size of the pile but, rather, the USACE's last-minute decision to change the elevation to which excavation would be necessary:

> Should it be suggested, by the way, that ENDE could have protected itself by conducting its own survey, which the contract

> entitled us to do, it must be recognized that such would have accomplished nothing. The problem was not with the size of the pile, per se, but with the fact that it was not until the final week of the operation that the government decided that the final grade would be determined with respect to the elevation of the haul road, not the lower elevation represented by the bottom of the so-called "pond area," the result of in-hind-sight "over excavation" by ENDE during pursuance of the work under an earlier HISS contract, which excavation was at the express direction of the Corps' representative, Brenda Bienkowski.

Def. App. 61-62.

**Plaintiff's response:** Does not disagree. Answering further, ENDE's September 25, 2002 letter also states:

> Finally, as to the law, we would urge you to consider our request under the additional theory of contract breach. The USACE bargained with claimant, succeeding in obtaining an agreement to transport a represented quantity of contaminated soil at a unit price that was figured to cover claimant's home office overhead spread out over the expected duration of load-out proportionate to that quantity. Had the true quantity been represented claimant would not have bargained for the pricing that resulted, and we would not have found ourselves a couple of days from completion with much unabsorbed home office overhead.

25. By letter dated September 25, 2002, USACE issued a final determination denying ENDE's revised and supplemented request for an equitable adjustment. Def. App. 63; <u>see also</u> Def. App. 68.

**Plaintiff's response:** Plaintiff agrees that Defendant denied the claim.

26. ENDE never submitted a claim for an equitable adjustment to the contracting officer or her representative based upon the theory that the deposit of material from the HISS 4 contract into the over-excavated constituted a "change." Def. App. 76.

**Plaintiff's response:** Disagreed. Plaintiff never incurred any damages arising from that directive until the end of the project when it realized that the excavated and transported quantities, *in toto*, would be significantly less than those bargained for by the parties and significantly less than those represented by Defendant.

Respectfully submitted,

Dated: November 21, 2005

s/ John C. Person

John C. Person, Esquire
PERSON & CRAVER LLP
1801 K Street, NW
Washington, DC 20006
(202) 466-4434 - phone
(202) 466-4416 - fax

Attorneys for Plaintiff